James M. Finberg (admitted *pro hac vice*)
Eve H. Cervantez (admitted *pro hac vice*)
Peder J. Thoreen (admitted *pro hac vice*)
Rebecca Smullin (admitted *pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone :  (415) 421-7151
Facsimile :  (415) 362-8064
Email:  jfinberg@altber.com
Email:  ecervantez@altber.com
Email:  pthoreen@altber.com
Email:  rsmullin@altber.com

Lead Counsel for Plaintiffs and Proposed Collective Action Members
[additional counsel for Plaintiffs and Proposed Collective Action Members on signature page]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DANIELI, *et al*., on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant. | 08 CV 3688 (SHS)<br><br>ECF CASE<br><br>**DECLARATION OF JAMES M. FINBERG IN SUPPORT OF MOTION FOR ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND COLLECTIVE ACTION, (2) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, (3) DIRECTING DISSEMINATION OF NOTICE AND RELATED MATERIAL TO THE CLASS, (4) APPROVING RELEASES AND (5) SETTING DATE FOR FAIRNESS HEARING AND RELATED DATES**<br><br>**Hon. Sidney H. Stein**<br><br>Hearing Date: November 13, 2009<br><br>Hearing Time: 11:30 a.m. |

I, James M. Finberg, declare as follows:

1. I am a member in good standing of the bar of the State of California, and have been admitted *pro hac vice* to appear in this Court in this case. I am a partner in Altshuler Berzon LLP, one of the firms representing Plaintiffs and the proposed FLSA Collective Action Members and Proposed Class Members in this action. I serve as lead counsel for the group of firms representing Plaintiffs in this action.

2. This Declaration is submitted in support of the Notice of Motion and Motion For Order Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, Directing Dissemination of Notice, and Claim Form to the Class; and Setting Date for Final Approval Hearing and Related Dates. Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement embodying the terms on which the Parties have agreed to resolve this case.

## My Background And Experience

3. I received a Bachelor of Arts degree, with honors in history and environmental studies, from Brown University in 1980. I received a Juris Doctor degree from the University of Chicago Law School in 1983. At the University of Chicago Law School, I was the Executive Editor of the *University of Chicago Law Review*.

4. From Fall 1983 through Summer 1984, I served as a law clerk to the Honorable Charles L. Levin, a Justice of the Supreme Court of the State of Michigan.

5. Since 2005, I have been listed by *Best Lawyers in America* as one of the best lawyers in America in the field of law and employment law. I am a fellow of the American College of Labor and Employment Lawyers. Since 2004, I have been designated by *San Francisco* Magazine as a Northern California "Super Lawyer," including being listed as one of the top 100 attorneys in Northern California since 2005. In 2003, I was selected by *The Recorder* legal newspaper (based on a survey of judges, arbitrators, mediators, and lawyers in the field) as the top plaintiffs' securities litigator in the San Francisco Bay Area. In 2004, I was

selected by *The Recorder* legal newspaper as one of the top plaintiffs' employment litigators in the San Francisco Bay Area.  In 2006, I was selected by *The Daily Journal* as one of the Top 100 lawyers in California.  In 2009, I was named a California Lawyer of the Year by the *California Lawyer Magazine* in the area of civil rights law.

6.      In 2005, I served as President of the Bar Association of San Francisco.  From 2000 through 2001, I served as Co-Chair of the delegation of lawyer representatives from the Northern District of California to the Ninth Circuit Judicial Conference.  From 1997 through 1998, I served as Co-Chair of the Board of Directors of the Lawyers' Committee for Civil Rights of the San Francisco Bay Area.  I am currently serving my second term as Co-Chair of the Lawyers' Committee's Board of Directors.

7.      I am a co-author of "Statistical and Other Expert Proof," in *Employment Discrimination Law* (4th ed., Lindemann and Grossman), and I co-edited with Eve Cervantez the 2008 supplemental chapter on Statistical and Other Expert Proof of that treatise.  I edited the 2000 and 2002 Cumulative Supplements to Chapter 39, "Statistical Proof," of that treatise (3d ed.).  I have been a contributor to *Wage and Hour Laws: A State-by-State Survey* (BNA, 2004) and to *Fair Labor Standards Act: 2004 Cumulative Supplement* (BNA, 2004).  I edited Chapter 19, regarding class and collective actions, of the 2nd edition of the *Fair Labor Standards Act* treatise.

8.      I am author or co-author of the following articles, among others: Co-author with Peder Thoreen, "The Impact of *Morgan v. Family Dollar Stores* on FLSA Collective Actions," *ABA Section of Labor and Employment Law* (2009); Co-author with David Borgen, Julia Akins Clark, Peder Thoreen, Ellen C. Kearnes, and William C. E. Robinson, "White Collar Exemptions," *ABA Section of Labor and Employment Law: The Wage & Hour Track* (2008); Co-Author with Peder J. Thoreen, "The Use of Representative Testimony and Bifurcation of Liability and Damages in FLSA Collective Actions (ABA 2007); Co-Author with Peter E. Leckman, "Holding Customers Who Assist Securities Fraud Accountable Under State Law," *Securities Litigation Report* (Vol. 3, No. 5, May 2006); Author, "State Law Wage/Hour Class Actions: Alive And Well In Federal Court," *ABA Labor and Employment Section 2005*; Co-Author with Melissa

Matheny, "A Developing Consensus: The PSLRA's 'Basis' Requirement Does Not Require the Disclosure of Confidential Sources in a Complaint," *Securities Litigation Report* (Vol. 2, No. 1, July/August 2005) (Glasser Legal Works). Co-Author with Chimène I. Keitner, "New Overtime Regulations Require Heightened Vigilance," *San Francisco Attorney Magazine*, Spring 2004; Co-Author with Chimène I. Keitner, "Summary of Proposed DOL Regulations Re FLSA Overtime Exemptions" (2003) (American Bar Association – Labor and Employment Law, Federal Labor Standards Legislation Committee Annual Report); "Title VII's Remedial Scheme: Employment Discrimination Class Actions at the Crossroads," *San Francisco Attorney* (August/September 2002); "Certification of Employment Discrimination Actions After The Passage of the 1991 Civil Rights Act: (b)(2) or Not (b)(2), That Is The Question*,*" *Class Actions & Derivative Suits,* Vol. 10 (March 2000); Co-Author with Joshua P. Davis, "*Allison v. Citgo Petroleum Corp*.- A Noble Retreat," *Class Actions & Derivative Suits*, Vol. 9, No. 1 (Winter 1999); Co-Author with Kelly Dermody, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998); Co-Author with Melanie M. Piech, "The Impact of the Private Securities Litigation Reform Act: Unintended Consequences," *Securities Reform Act Litigation Reporter*, Vol. 6, No. 3 (Dec. 1998); Co-Author with Karen Jo Koonan, "The Importance of Anecdotal Testimony to the Jury Trial of a Title VII Class Action: Lessons from *Butler v. Home Depot,*" *Class Actions & Derivative Suits,* Vol. 8, No. 3 (Summer 1998); "Northern District of California Requires Internet Posting of Pleadings And Key Briefs In Securities Actions," "*Securities Reform Act Litigation Reporter*" (1997); "Class Actions: Useful Devices That Promote Judicial Economy And Provide Access to Justice," 41 *New York Law School Law Review* 353 (1997); Co-Author (with Melvin R. Goldman), "Deposing Expert Witnesses" in *Taking Depositions* (ABA) (1989); Co-Author (with George C. Weickhardt), "New Push For Chemical Weapons," *Bulletin of the Atomic Scientist* (Nov. 1986); Comment, "The General Mining Law and The Doctrine of Pedis Possessio: The Case For Congressional Action," 49 *University of Chicago Law Review* 1027 (1982).

9. During the spring semester of 2008, I served as an Adjunct Professor of Law at the University of California, Hastings College of Law, where I taught Employment Discrimination Law.

10. During my approximately 25 years of practice, I have served as an attorney in many complex class actions. I have represented plaintiff classes in class actions in many dozens of cases, including the following: *Common Cause of Colorado v. Coffman*, C08-CV-2321 WYD (Dist. Colo.) (obtained preliminary injunctive relief in Oct. 2008 protecting voting rights of approximately 40,000 voters purged from voting rolls); *Rosenburg v. Int'l Bus. Machines Corp.*, No. C06-0430 PJH (N.D. Cal.) ($65 million settlement of wage and hour class and collective action in 2007); *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI; C03-2878 SI (N.D. Cal.) (settlement of $55 million, plus comprehensive injunctive relief, of race and national origin discrimination claims in 2007); *Adams v. Inter-Con Security Systems* C06-5428 MHP (N.D. Cal.) (settlement of $4 million in wage/hour settlement in 2008). *In re The Pep Boys Overtime Actions,* C07-CV-01755 VBF (C. D. Cal.) (settlement of $6 million in wage/hour case in 2008); *Martin v. NUMMI,* C07-CV-3887 PJH (N. D. Cal.) (settlement of $4.65 million in off-the-clock case in 2008); *Wynne v. McCormick & Schmick's,* C06-CV-3153 CW (N. D. Cal.) (approval in 2008 of Consent Decree providing comprehensive injunctive relief, plus monetary relief of $2.1 million); *Jaffe v. Morgan Stanley*, C06-CV-3903 TEH (N. D. Cal.) (approval in 2008 of Consent Decree providing comprehensive injunctive relief, plus $16 million in monetary relief, in race discrimination action involving financial advisors); *Amochaev v. Smith Barney*, C05-CV-1298 PJH (N. D. Cal.) (approval in 2008 of Consent Decree providing comprehensive injunctive relief, and $33 million in monetary relief in gender discrimination class action involving financial advisors); *Butler v. Home Depot*, No. C94-4335 SI (settlement of $87.5 million, plus comprehensive injunctive relief, in gender discrimination case in 1998); *Frank v. United Airlines*, No. C92-0692 MJJ (N.D. Cal.) ($36.5 million gender discrimination settlement in 2004); *Giannetto v. CSC Corp.*, No. CV 03-8201 (C.D. Cal.) ($24 million settlement of wage/hour case in 2005); *Gerlach v. Wells Fargo & Co.*, No. C05-0585 CW (N.D. Cal.) ($12.8

million settlement of wage and hour class and collective action in 2007); *Trotter v. Perdue Farms*, Case No. 99-893 (RRM) (U.S.D.C. Del.) ($10 million settlement in wage and hour case in 2002); *Thomas v. CSAA*, No. CH217752 (Alameda County Sup. Ct.) ($8 million settlement of insurance claim adjuster overtime case in 2002); *Gottlieb, et al v. SBC Communications, et al.*, No. CV 00-4139 AHM (C.D. Cal.) ($10 million ERISA settlement in 2002); *Buttram v. UPS*, No. C97-1590 MJJ (N.D. Cal.) ($12.2 million settlement, plus comprehensive injunctive relief, of race discrimination action in 1999); *Church v. Consolidated Freightways, Inc.*, 1993 WL149840 (N.D. Cal.) ($13.5 million settlement in age discrimination case in 1993); *In re California Micro Devices Securities Litigation*, C94-2817 VRW (N.D. Cal.) ($26 million in settlements – approximately 100% of losses); *In re Network Associates, Inc. Securities Litigation*, No. C99-1729 WHA (N.D. Cal.) ($30 million settlement in 2001); *In re Mediavision Technology Securities Litigation*, No. C94-1015 EFL (N.D. Cal.) (settlements and judgment totaling $218 million).

### Qualifications of Plaintiffs' Counsel

11. Attached as Exhibits 2-13 are the firm resumes of the 12 law firms serving as counsel for Plaintiffs in this case ("Plaintiffs' Counsel"). Those firms have substantial experience in wage/hour litigation and in class and collective actions. They also have adequate resources to represent the proposed class in this case.

### Thorough Investigation And Litigation of the Class Claims

12. **Overview.** Before and during the formal litigation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the class's claims and defenses. Plaintiffs' Counsel conducted a thorough factual investigation and did a thorough legal analysis.

13. **Pre-filing investigation.** Before filing the complaint in this action, Plaintiffs' Counsel interviewed many dozens of IBM employees and former employees who were reclassified as non-exempt, but not paid overtime for the period when they were misclassified. (In the *Rosenburg* case, Plaintiffs' Counsel had interviewed hundreds of IBM employees in these same positions about their job duties.)

14. Based on this pre-filing investigation, Plaintiffs' Counsel prepared and filed a complaint on April 17, 2008, alleging that IBM had misclassified class members as exempt from overtime in violation of the Fair Labor Standards Act and California law, then correctly reclassified these employees, but without paying them for the overtime worked when misclassified.

15. On February 18, 2009, Plaintiffs' Counsel filed the First Amended Complaint, which added claims under the state laws of Colorado, Connecticut, Illinois, Kentucky, Maryland, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Washington, and Wisconsin.

### Post-Filing Formal and Informal Discovery

16. **Document Discovery.** After the complaint in this action was filed, Plaintiffs' Counsel served IBM with a request for production of documents. IBM produced over 23,000 pages of documents in this action. This was in addition to the many tens of thousands of documents produced in *Rosenburg*, which the Parties agreed could be used in *Danieli*, since they were relevant to the claims in both cases. In the *Danieli* case alone, IBM responded to 79 document requests. Among other things, IBM produced documents regarding job duties and responsibilities, training, orientation, human resource policies and procedures, IBM's classification and reclassification decisions, compensation policies and procedures, and pension plan documents.

17. **Database Analysis.** Pursuant to Plaintiffs' document requests, IBM also produced an electronic database containing payroll data for the proposed class. These data included identifying information, dates of employment, department and group codes, wage rates, hours reported, and other fields of data. Plaintiffs' Counsel analyzed these data, with the assistance of a statistical expert, to estimate the proposed class's damages.

18. **Post-Filing Witness Interviews.** IBM also produced to Plaintiffs' Counsel a list of names and addresses of the over 6,000 class members. Plaintiffs' Counsel sent letters to these

class members.  Plaintiffs' Counsel extensively interviewed over 450 Class Members regarding their job duties and hours worked.

19. **Interrogatories.**  Plaintiffs' Counsel served IBM with a set of interrogatories on October 17, 2008.  Among other things, IBM's interrogatory responses, and supplemental responses, described the reclassification process.

20. **Depositions.**  IBM deposed four plaintiffs and five opt-ins in the *Danieli* case.  This was in addition to depositions taken in *Rosenburg*, which Plaintiffs believe were relevant and admissible.  In *Rosenburg*, Plaintiffs' Counsel took the depositions of five corporate designees pursuant to Fed. R. Civ. P. 30(b)(6) on topics including job duties, supervision, training, and IBM's classification decisions.

## Motions Practice

21. On March 18, 2009, Plaintiffs' Counsel served on IBM with Plaintiffs' Notice of Motion and Motion for Conditional Certification of FLSA Collective Action and Facilitation of Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act.  The Parties fully briefed that motion.  Plaintiffs' Counsel's papers included extensive evidence.  Plaintiffs' Counsel also submitted 76 declarations from fact witnesses in support of that motion.

22. IBM served Plaintiffs' Counsel Summary Judgment Motions directed to Plaintiffs Danieli and Rollins and opt ins Sorokach and Parker.  On May 29, 2009, Plaintiffs' Counsel served their oppositions to those summary judgment motions.  Plaintiffs' opposition papers included substantial evidence.

23. IBM also served on Plaintiffs' Counsel a Motion to Strike Certain Evidence regarding IBM's reclassification decision that Plaintiffs' Counsel had submitted with their opposition to IBM's summary judgment motions.  The parties fully briefed that motion.

24. **Comprehensive Legal and Factual Analysis.**  In connection with briefing the motion for conditional certification, the four summary judgment motions, and the motion to strike evidence, Plaintiffs' Counsel became thoroughly familiar with the facts and law of this case.

**The Mediation Process**

25.     The Parties participated in a full day mediation session on September 16, 2009. The mediation was presided over by David Rotman of the firm of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder, an experienced mediator who had helped the parties to resolve the *Rosenburg* case.  Prior to the mediation session, the Parties exchanged extensive mediation briefs, with supporting evidence.  Plaintiffs' Counsel also submitted a damages analysis prepared by the statistician they retained to analyze the payroll data.  The parties had extensive communications prior to the mediation regarding the damages calculations.  By the time of the mediation, Plaintiffs' Counsel were fully informed about the strengths and weaknesses of the Class's case.

26.     Named Plaintiff Danieli attended the mediation session.  Plaintiffs' Counsel communicated with other Plaintiffs via email during the mediation session.

**Arms'-Length Settlement Negotiations**

27.     **Arms-Length negotiations.**  The proposed settlement was negotiated in good faith and at arms' length.  The parties vigorously pressed their positions throughout.  By the time of the mediation, Plaintiffs' Counsel had already dedicated over 5,500 hours to this case and incurred more than $110,000 in out-of-pocket expenses.  During the mediation session, when it appeared that the parties were at an impasse, Mediator Rotman made a mediator's proposal, which both sides accepted.  The Parties reduced that agreement to a signed memorandum of understanding at the mediation.  After that, the parties continued their negotiations, exchanging extensive iterations of comments and edits to the proposed settlement agreement, involving every material term.  These negotiations culminated in the signing of a Joint Stipulation of Settlement and Release, a copy of which is attached hereto.

**Fair, Reasonable, And Adequate Settlement**

28.     In my view, the proposed settlement constitutes a fair, reasonable, and adequate result for the class members in light of the risks, expenses, and delay of further litigation, as well as the strengths and weaknesses of the class members' claims.  The plan of allocation fairly and

reasonably compensates class members. I base these opinions on the extensive discovery and thorough legal analysis Plaintiffs' Counsel have conducted and my experience prosecuting other large wage and hour class actions.

29. Because all Class Members in this case are employees of IBM, or were employees of IBM in 2008, IBM has recent addresses for all Class Members. Accordingly, mailing the Notice of Settlement by first class mail to Class Members' last known address in IBM's records is the best practicable notice in the circumstances of this case. Publication notice is not necessary or appropriate in this case.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct. Executed on October 15, 2009, at San Francisco, California.

JAMES M. FINBERG