**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------- X

**MICHAEL DANIELI, et al., on behalf of**
**themselves and those similarly situated,**

         **Plaintiff,**

         **-against-**

**INTERNATIONAL BUSINESS**
**MACHINES CORPORATION,**

         **Defendant.**

------------------------------------------------- X

**No. 08 CV 3688 (SHS)**

**ECF CASE**

**JOINT STIPULATION**
**OF SETTLEMENT AND RELEASE**
**OF ALL CLAIMS**

This Joint Stipulation of Settlement and Release of All Claims, including all Exhibits hereto (collectively, the "Agreement"), is entered into by and between Plaintiffs (as hereinafter defined) and the Class of individuals that they seek to represent (as hereinafter defined), on the one hand, and Defendant (as hereinafter defined), on the other hand.

## RECITALS

WHEREAS, on April 17, 2008, Plaintiff Michael Danieli filed his initial Complaint, as a proposed class action, in which he alleged, among other things, that International Business Machines Corporation ("IBM") misclassified putative class members as exempt from overtime pay requirements under federal and state wage and hour laws and improperly withheld credits that the putative class members alleged are due under certain benefit plans.

WHEREAS, the Complaint asserted claims under the Employee Retirement Income Security Act ("ERISA"), the Fair Labor Standards Act ("FLSA"), and various California state laws and sought recovery of, among other things, unpaid compensation, liquidated damages, interest, pension benefits, waiting time penalties, compensation for failure to provide itemized statements of total hours worked, injunctive relief, and attorneys' fees and costs.

WHEREAS, on February 23, 2009, a First Amended Complaint was filed adding claims under the wage laws of Colorado, Connecticut, Illinois, Kentucky, Maryland, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Washington, and Wisconsin. The First Amended Complaint was brought by Plaintiff Danieli and additional Plaintiffs Steve March, Terri Golkowski, Bill Jacobs, Joseph Glavan III, Anthony Moore, Sr., Charles Antonelli, David Post, Thomas Ottogalli, Patrick McCambridge, Robert Nulty, James Caldwell, Barbara Luca, Timothy Rollins, Melanie Maruca, Darryl Habeck, and Jose Silva.

WHEREAS, on March 18, 2009, Plaintiffs served a motion for conditional certification of an FLSA collective action and facilitation of court-authorized notice;

WHEREAS, on March 18, 2009, Defendant served motions for summary judgment as to Plaintiffs Danieli and Rollins and Opt-Ins Denise Sorokach and Hal Parker;

WHEREAS, Defendant denied and continues to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined) and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever and without admitting that benefit credits, pay and/or overtime amounts were improperly withheld from any employees, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

WHEREAS, Class Counsel (as hereinafter defined) has conducted extensive investigation of this case, reviewing tens of thousands of pages of documents produced by IBM, reviewing data on potential class members, including salary, position worked, and dates of hire and termination, and interviewing hundreds of putative class members regarding their job duties and overtime hours.

WHEREAS, the Parties (as hereinafter defined) participated in the mediation of this matter on September 16, 2009 (presided over by David Rotman).

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiffs and the Class. Based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery that is less favorable to the Class, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Class.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.   DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1   **Charity.** "Charity" shall mean Habitat For Humanity.

1.2   **Class; Class Member.** "Class" shall mean all current and former IBM employees who were in bands 6, 7, and/or 8 of position codes 499A, 499K, 594J, 595K, and/or 999A-E at any time on or after January 12, 2007 up through and including December 31, 2008 and were subsequently reclassified, during that time frame, to band 6, 7, or 8 of position code 995K or 999K, except that the Class does not include (1) the 382 such employees listed in the Appendix to this Agreement who, after being so reclassified, were re-reclassified to exempt positions and (2) any individual who has asserted any Released Claim (as defined

herein) as a plaintiff in any lawsuit (other than the Litigation) that was pending and served on IBM as of September 16, 2009 and whom IBM identified to Class Counsel in writing prior to execution of this Agreement as a plaintiff in such a lawsuit. A member of the Class is a "Class Member."

**1.3    Claims Administrator.** "Claims Administrator" means the entity jointly selected by the Parties to provide notice to the Class and administer payment of claims submitted by Class Members.

**1.4    Class Counsel.** "Class Counsel" refers to James M. Finberg and Eve H. Cervantez of Altshuler Berzon, LLP; Adam T. Klein and Justin M. Swartz of Outten & Golden LLP; LLP; Kelly Dermody, Rachel J. Geman, and Jahan C. Sagafi of Lieff, Cabraser, Heimann & Bernstein, LLP; Steven G. Zieff, David A. Lowe, Patrice Goldman, John T. Mullan, and Kenneth J. Sugarman of Rudy, Exelrod & Zieff, LLP; Todd F. Jackson of Lewis, Feinberg, Lee, Renaker & Jackson, P.C.; Ira Spiro of Spiro Moss, Barness, Harrison & Barge, LLP; J. Derek Braziel of Lee & Braziel, LLP; Richard Burch of Bruckner Burch, PLLC; David Borgen of Goldstein, Demchak, Baller, Borgen and Dardarian; Michael Singer of Cohelan Khoury & Singer; Daniel Palay of The Palay Law Firm; and Douglas Werman of Werman Law Office, P.C. For purposes of providing any notices required under this Agreement, Class Counsel shall refer to James M. Finberg, Altshuler Berzon, LLP, 177 Post Street, Suite 300, San Francisco, CA 94108-4797.

**1.5    Defendant's Counsel.** "Defendant's Counsel" refers to Jones Day. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Matthew W. Lampe, Jones Day, 222 East 41st Street, New York, New York 10017-6702.

**1.6    Court.** "Court" refers to the United States District Court for the Southern District of New York, the Honorable Sidney H. Stein presiding.

**1.7    Covered Position.** "Covered Position" means bands 6-8 of position codes 499A, 499K, 594J, 595K, and/or 999A-E.

**1.8    Defendant; IBM.** "Defendant" or "IBM" shall mean International Business Machines Corporation.

**1.9    Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the joint Motion for Judgment and Final Approval.

**1.10   Effective Date; Effective.** "Effective" shall mean that all of the following have occurred, and "Effective Date" shall be the date that all of the following have occurred:

(A)    the Court has entered Judgment and ruled on the motions for awards of service payments pursuant to Section 3.3 and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

(B)    the Judgment and the rulings on such motions have become Final. "Final" means the later of:

(1) After the time for seeking appellate review has closed because the deadline for filing a timely notice of appeal has expired and cannot be extended; or

(2) If appellate review is sought, after any and all avenues of appellate review have been exhausted and no further appellate review is permitted or possible and the Judgment has not been modified, amended or reversed in any way.

**1.11   First Amended Complaint.** "First Amended Complaint" refers to the First Amended Complaint, filed on February 23, 2009.

**1.12   Litigation.** "Litigation" means *Danieli, et al. v. International Business Machines Corp.*, Case No. 08 CV 3688 (SHS), pending in the United States District Court of the Southern District of New York.

**1.13   Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court conditionally certifying the Class and preliminarily approving, inter alia, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

**1.14   Parties.** "Parties" shall mean and refer to Plaintiffs, the Class, and Defendant.

**1.15   Plaintiffs.** "Plaintiffs" shall mean and include Michael Danieli, Jose Silva, Steve March, Terri Golkowski, Bill Jacobs, Joseph Glavan III, Anthony Moore, Sr., Charles Antonelli, David Post, Thomas Ottogalli, Patrick McCambridge, Robert Nulty, James Caldwell, Barbara Luca, Timothy Rollins, Melanie Maruca, and Darryl Habeck and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, attorneys, and assigns of such individuals, as applicable and without limitation.

**1.16   Qualified Class Member.** "Qualified Class Member" means a Class Member who does not opt out and who meets the requirements regarding the execution and return of the Claim Form and Release set forth in Section 3.4(A).

**1.17   Settlement Payment.** "Settlement Payment" means the $7,500,000.00, plus the interest accrued as provided in Section 3.1(B) (and less taxes and investment fees as provided in Section 3.1(B)), that Defendant pays to settle as described in Section 3.1.

**1.18   Net Settlement Payment.** "Net Settlement Payment" shall be the remainder of the Settlement Payment after deductions for court-approved attorneys' fees and costs/expenses as described in Section 3.2, court-approved service payments as described in Section 3.3, and a reserve for reasonable costs of settlement administration.

**1.19   Recovery Period.** "Recovery Period" shall mean the following: From January 12, 2007 to the date of the Class Member's reclassification to positions code 995K or 999K (bands 6-8), except that, for Class Members who were also members of the settlement class in *Thomas Rosenburg v. International Business Machines Corporation*, Case No. CV 06-0043 PJH (N.D. Cal.), as "Class Member" is defined in Section 1.2 of the Joint

Stipulation of Settlement and Release of all claims in that case (Docket Entry 97), the "Recovery Period" shall be from July 13, 2007 to the date of the Class Member's reclassification to position code 995K or 999K (bands 6-8).

## 2.   APPROVAL AND CLASS NOTICE

2.1   **Retention of Claims Administrator.**  Within 30 calendar days after the execution of this Agreement, the Parties shall retain a Claims Administrator.  The Claims Administrator shall be responsible for the claims administration process, distribution to Qualified Class Members, and other duties as provided herein.  The Claims Administrator shall be required to agree in writing to treat information it receives or generates as part of the claims administration process as confidential and to use such information solely for purposes of claims administration.  The fees and expenses of the Claims Administrator shall be paid exclusively out of the Settlement Payment.  The Claims Administrator shall be required to agree to a reasonable cap for fees and expenses for claims administration work, and such cap shall provide the basis for the reserve referenced in Section 1.18. Any fees and expenses in excess of the cap shall not be paid to the Claims Administrator unless the Claims Administrator files a declaration with the Court explaining the basis for the additional fees and costs and receives approval by the Court for such payments to be made out of the Settlement Payment.  In no event shall the Claims Administrator seek additional fees and expenses after the Fairness Hearing.

2.2   **Preliminary Approval by the Court.**  On or before October 16, 2009, Plaintiffs and Defendant will submit this Agreement to the Court, together with a Motion for Order Conditionally Certifying Settlement Class and Preliminarily Approving Class Action Settlement, a proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") in the form attached as Exhibit A, a proposed Opt-Out Statement in the form attached as Exhibit B, a Claim Form and Release in the form attached as Exhibit C, a proposed Order Granting Preliminary Approval in the form attached as Exhibit D, and individual releases for Plaintiffs Michael Danieli, Jose Silva, Steve March, Terri Golkowski, Bill Jacobs, Joseph Glavan III, Anthony Moore, Sr., Charles Antonelli, David Post, Thomas Ottogalli, Patrick McCambridge, Robert Nulty, James Caldwell, Barbara Luca, Timothy Rollins, Melanie Maruca, and Darryl Habeck in the form attached as Exhibit E.  IBM will thereafter provide timely notice of such submission pursuant to the Class Action Fairness Act.  Plaintiffs will seek, and Defendant will not oppose, conditional certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).  If the Court denies the Motion for Order Conditionally Certifying Settlement Class and Preliminarily Approving Class Action Settlement or otherwise fails to enter the proposed Order Granting Preliminary Approval in the form attached as Exhibit D, then the Litigation will resume unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement.  If a mutually agreed class settlement is not approved, the case will proceed as if no settlement has been attempted, and Defendant retains the right to contest whether this case should be maintained as a class action and/or collective action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation.  In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose dates for completion of class certification and

merits discovery and the filing of motions (and oppositions thereto), including but not limited to Plaintiffs' motion for *Hoffmann-LaRoche* notice, Plaintiffs' motion for class certification under Fed. R. Civ. P. 23, and Defendant's summary judgment motions. Further, if a mutually agreed class settlement is not approved, the Parties agree that the Fourth Stipulation And Order Regarding Case Schedule And Tolling Of FLSA Statute Of Limitations, 'so ordered' by the Court on April 28, 2009 (Docket Entry 81) and/or any subsequent order providing for tolling of the FLSA statute of limitations shall be amended such that the end date for the tolling of the FLSA statute of limitations shall be the later of: (1) the date the Court denies the Motion for Order Conditionally Certifying Settlement Classes and Preliminarily Approving Class Action Settlement or (2) if such motion is timely filed, the date the Court denies the Parties' joint motion for reconsideration of such denial. All other provisions regarding tolling specified in the April 28, 2009 stipulation or subsequent order shall remain in full force and effect.

**2.3**    **Class Notice.**

(A)    Within 20 calendar days after the date of entry of the Order Granting Preliminary Approval, IBM will provide the Claims Administrator with a list, in electronic form, of the names, last known addresses, employee serial numbers and Social Security numbers, of all Class Members. So that Class Counsel can assist Class Members with questions about addresses to which the Notice is sent, IBM shall, subject to the Stipulated Protective Order in this case (Docket Entry 52), simultaneously provide Class Counsel with the same list but without Social Security numbers.

(B)    Within 10 calendar days after receiving the information described in Section 2.3(A), the Claims Administrator shall mail, via First Class United States Mail, the Notice in the form attached as Exhibit A, the Opt-Out Statement in the form attached as Exhibit B, and the Claim Form and Release in the form attached as Exhibit C, to all Class Members using each individual's last known address as recorded in Defendant's human resources records or, if different, the address obtained by the Claims Administrator through the National Change of Address Database and any more current address provided by Class Counsel. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the Notice is returned by the post office as undeliverable and shall attempt remailings in those situations, but in no event shall the Claims Administrator attempt remailings of the Notice to any Class Member more than 40 calendar days after the date of the initial mailing. The Claims Administrator shall notify Class Counsel and Defendant's Counsel at least weekly of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s).

(C)    The Claims Administrator will maintain a dedicated phone line that Class Members can call to determine whether their Claim Form and Release has been received and the date of the receipt.

**2.4**    **Class Member Opt-Out.**

(A)    Any Class Member may request exclusion from the Class by "opting out." Class Members who choose to do so must submit a written and signed request for exclusion to the Claims Administrator, in the form attached as Exhibit B, which will be attached to the notice described in Section 2.3. To be effective, such Opt-Out Statements must be (1) mailed to the Claims Administrator via First Class United States Mail and postmarked by a date certain to be specified on the Notice, which will be 45 calendar days after the Claims Administrator makes the initial mailing of the Notice or (2) received by the Claims Administrator by that date, provided, however, that if a Class Member mails the Opt-Out Statement pursuant to option (1), it will be effective only if received by the Claims Administrator on or before 10 calendar days after the end of the Opt-Out Period. The end of the "Opt-Out Period" shall be 45 calendar days after the Claims Administrator makes the initial mailing.

(B)    The Claims Administrator shall stamp the date of receipt of the Opt-Out Statement on the original of each Opt-Out Statement that it receives and shall serve by e-mail and overnight delivery copies of each Statement on Class Counsel and Defendant's Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator also shall, within 13 calendar days after the end of the Opt-Out Period, provide (by e-mail and overnight delivery) Class Counsel and Defendant's Counsel with a declaration under penalty of perjury attaching (1) stamped copies of any Opt-Out Statements, with Social Security Numbers redacted, and (2) a final list of all Opt-Out Statements. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

**2.5**    **Excessive Opt-Outs.** In the event that 100 or more Class Members submit effective Opt-Out Statements, Defendant shall have the right, in its sole discretion, to void this Agreement, by filing with the Court of a Notice of Withdrawal. In no event shall Defendant file such a Notice of Withdrawal later than 20 calendar days after the end of the Opt-Out Period. If Defendant files a timely Notice of Withdrawal, the Litigation will proceed as if no settlement has been attempted. In that event, the Court will enter an order decertifying any and all settlement classes, and Defendant retains the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this action. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose dates for completion of class certification and merits discovery and the filing of motions (and oppositions thereto), including but not limited to Plaintiffs' motion for *Hoffmann-LaRoche* notice, Plaintiffs' motion for class certification under Fed. R. Civ. P. 23, and Defendant's summary judgment motions. Further, if Defendant files a timely Notice of Withdrawal, the Parties agree that the Fourth Stipulation And Order Regarding Case Schedule And Tolling Of FLSA Statute Of Limitations, 'so ordered' by the Court on April 28, 2009 (Docket Entry 81), and/or any

subsequent order providing for the tolling of the FLSA statute of limitations, shall be amended such that the end date for the tolling of the FLSA statute of limitations shall be 30 calendar days after the date that Defendant files the Notice of Withdrawal. All other provisions regarding tolling specified in the April 28, 2009 stipulation or subsequent order shall remain in full force and effect.

2.6 **Claim Form and Release.** A Class Member who does not opt out pursuant to Section 2.4 will be deemed eligible for a payment hereunder if and only if he or she timely executes and returns the Claim Form and Release (in accordance with the instructions), in the form attached as Exhibit C, which will be attached to the Notice, including: (1) a statement that, during the applicable period, he or she worked overtime; (2) an acknowledgement that, by signing the Claim Form and Release, he or she opts in to the case pursuant to 29 U.S.C. § 216(b); and (3) a release of claims consistent with that set forth in Section 4.1 of this Agreement. The Claim Form and Release must be signed by the current or former employee who seeks to participate in the settlement or someone with a legal right to act on his or her behalf. To be effective, Class Members' Claim Forms and Release must be (1) mailed to the Claims Administrator via First Class United States Mail and postmarked by a date certain to be specified on the Notice, which shall be 60 calendar days after the Claims Administrator makes the initial mailing of the Notice or (2) received by the Claims Administrator by that date, provided, however, that if a Class Member mails the Claim Form and Release pursuant to option (1), it will be deemed timely only if received by the Claims Administrator on or before 75 calendar days after the Claims Administrator makes the initial mailing of the Notice.

2.7 **Objections to Settlement.**

(A) Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such objections must be (1) mailed to the Claims Administrator via First-Class United States Mail and postmarked by a date certain, to be specified on the Notice, which shall be 45 calendar days after the initial mailing by the Claims Administrator of such Notice or (2) received by the Claims Administrator by that date, provided, however, that if a Class Member mails the objection pursuant to option (1), it will be deemed timely only if received by the Claims Administrator on or before 10 calendar days after the end of the Opt-Out Period. The Claims Administrator shall stamp the date received on the original and send copies of each objection to the Parties by e-mail and overnight delivery not later than 3 calendar days after receipt thereof. The Claims Administrator shall also provide to Class Counsel and Defendant's Counsel (by e-mail and overnight delivery) a declaration signed under penalty of perjury attaching the date-stamped copies of any objections within 13 calendar days after the end of the Opt-Out Period.

(B) An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections only with Court approval. No Class Member may appear at the Fairness Hearing

unless he or she has submitted a timely objection that complies with the procedures provided in Section 2.7.  Any Class Member who has submitted an Opt-Out Statement may not submit objections to the settlement and no such objections shall be considered by the Court.

**2.8     Motion for Judgment and Final Approval.**  Not later than 30 calendar days after the end of the Opt-Out Period,  Plaintiffs and Defendant will submit a joint Motion for Judgment and Final Approval.  As part of that Motion, the Parties will request that the Judgment and Final Approval Order include the dismissal, without prejudice, of the claims of any individual opt-ins who have not already withdrawn their opt-in forms and who would not be bound by the Judgment either because they are not Class Members or because they opted out of the case.

**2.9     Entry of Judgment.**  At the Fairness Hearing, and in their Motion for Judgment and Final Approval, the Parties will request that the Court, among other things, (a) grant final certification, for purposes of settlement, of the Class under Rule 23(b)(3) and of the opt-in group as a collective action under § 29 U.S.C. 216(b), (b) enter Judgment in accordance with this Agreement and in a form to be proposed by the Parties, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.4, (d) dismiss the Litigation with prejudice, subject to the Court's retention of jurisdiction to oversee enforcement of the Agreement, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) approve as fair the individual releases in the form attached as Exhibit E.

**2.10    Effect of Failure to Grant Final Approval.**  In the event the Court fails to enter Judgment and grant Final Approval in accordance with this Agreement and in the form to be proposed by the Parties, or such Judgment does not become Final as defined herein, the Parties shall proceed as follows:  The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied and/or unsuccessful, or a mutually agreed settlement is not approved:

(A)     The Litigation will proceed as if no settlement has been attempted.  In that event, the Class and opt-in group certified for purposes of settlement shall be decertified, and Defendant retains the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this action.  In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose dates for completion of class certification and merits discovery and the filing of motions (and oppositions thereto), including but not limited to Plaintiffs' motion for *Hoffmann-LaRoche* notice, Plaintiffs' motion for class certification under Fed. R. Civ. P. 23, and Defendant's summary judgment motions.  Further, the Parties agree that the Fourth Stipulation And Order Regarding Case Schedule And Tolling Of FLSA Statute Of Limitations, 'so

ordered' by the Court on April 28, 2009 (Docket Entry 81), and/or any subsequent order providing for the tolling of the FLSA statute of limitations, shall be amended such that the end date for the tolling of the FLSA statute of limitations period shall be the later of: (1) the date of the Court's order denying entry of Judgment in accordance with this Agreement and in the form proposed by the Parties or (2) if such motion is timely filed, the date the Court denies the Parties' joint motion for reconsideration of such denial. All other provisions regarding tolling specified in the April 28, 2009 stipulation or subsequent order shall remain in full force and effect.

(B)     The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement and that the Parties will continue to litigate the case. Such notice shall be mailed by the Claims Administrator via First Class United States Mail to the addresses used by the Claims Administrator in mailing the Notice.

(C)     Plaintiffs and Defendant will share in equal parts the fees and expenses of the Claims Administrator.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Payment.

(A)     Defendant agrees to pay $7,500,000.00, which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court and any and all amounts to be paid to Class Members, and shall also cover the reserve set aside for reasonable costs of settlement administration, and any court-approved service payments to Plaintiffs. This Settlement Payment shall constitute a special award to the Class and to any Class Members receiving a payment and shall not be considered as a payment of overtime, salary, wages, and/or compensation under the terms of any company benefits plan or for any purpose except for tax purposes as provided under Section 3.5. Other than the employer's share of payroll taxes described in Section 3.5(C), under no circumstances will Defendant be required to pay more than $7,500,000.00 for any reason under the Agreement. No portion of the Settlement Payment will revert to IBM.

(B)     The Settlement Payment will accrue interest from September 16, 2009 until the date that is 20 calendar days after the Effective Date. Interest shall accrue at a rate of .60% per annum calculated on the basis of a 360 day year for the actual number of days elapsed. Interest accrued on the Settlement Payment, net of taxes and any reasonable fees associated with investing such amount (which shall not be higher than the fees associated with investing that amount in an investment of similar term and yield), shall immediately become part of the Settlement Payment.

(C)    If the reserve set aside for costs of claims administration exceeds the actual costs of claims administration or if Qualified Class Members fail to cash their checks, these remaining funds shall be paid to Charity.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    At the Fairness Hearing, Class Counsel shall petition the Court for an award of attorneys' fees in an amount not to exceed $2,250,000.00 (which is 30% of $7,500,000.00). Class Counsel shall also seek reimbursement of no more than $150,000.00 in litigation costs and expenses. Defendant will not oppose such a fee and cost application. The Claims Administrator shall pay to Class Counsel these fees, costs, and expenses in the amount approved by the Court from the Settlement Payment no later than 10 calendar days after IBM makes the funds transfer specified in Section 5(D). Defendant shall have no additional liability for fees, costs, or expenses, including, without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs.

(B)    The substance of Class Counsel's application for attorneys' fees and costs/expenses is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs/expenses shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

**3.3    Payments To Certain Plaintiffs.** At the Fairness Hearing, Plaintiffs Michael Danieli, Jose Silva, Steve March, Terri Golkowski, Bill Jacobs, Joseph Glavan III, Anthony Moore, Sr., Charles Antonelli, David Post, Thomas Ottogalli, Patrick McCambridge, Robert Nulty, James Caldwell, Barbara Luca, Timothy Rollins, Melanie Maruca, and Darryl Habeck will apply to the Court to receive no more than $5,000 each from the Settlement Payment for services rendered to the Class. IBM will not oppose such applications. The Claims Administrator shall pay these service payments in the amounts approved by the Court from the Settlement Payment no later than 10 calendar days after IBM makes the funds transfer specified in Section 5(D), provided that the respective Plaintiffs have executed and provided to Defendant's Counsel individual releases in the form attached as Exhibit E (and provided that any applicable revocation period has expired; if a revocation period applicable to any Plaintiff has not expired, the payment will be made no later than 10 calendar days after the expiration of the revocation period). The service payments and the requirements for obtaining such payments set forth in this Section 3.3 are separate and apart from, and in addition to, other recoveries to which these Plaintiffs might be entitled, and other requirements for obtaining such recoveries, under other provisions of this Agreement. The substance of the above-referenced Plaintiffs' application for service payments is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

These service payments shall constitute a special award to Plaintiffs receiving such payments and shall not be considered as a payment of overtime, salary, wages and/or compensation to any Qualified Class Member under the terms of any company benefit plan or for any other purpose except for tax purposes. The receipt of service payments shall not affect the amount of any contribution to or level of benefits under any company benefit plan. A Plaintiff who chooses not to sign Exhibit E shall still be able to obtain any amount that he or she is entitled to receive as a Class Member under this Agreement.

**3.4**   **Distribution to Class Members.**

(A)   A Class Member who does not opt out pursuant to Section 2.4 will be deemed eligible for a payment hereunder if and only if he or she timely executes and returns the Claim Form and Release (in accordance with the instructions), including the oath, release and opt-in acknowledgement in accordance with section 2.6 above.

(B)   Regardless of whether a Class Member timely executes and returns the Claim Form and Release, any Class Member who does not opt out pursuant to Section 2.4 is subject to the releases set forth in Section 4.

(C)   Settlement payments to Qualified Class Members shall not be considered as a payment of overtime, salary, wages and/or compensation to any Qualified Class Member under the terms of any company benefit plan or for any purpose except for tax purposes as provided under Section 3.5. The receipt of settlement payments shall not affect the amount of any contribution to or level of benefits under any company benefit plan.

(D)   In the event that a Class Member fails to timely submit the requisite Claim Form and Release (in accordance with the instructions), the Class Member shall forfeit any right to distribution from the Settlement Payment and, if he or she does not opt out, will be bound by the releases set forth in Section 4.

(E)   A Qualified Class Member's proportionate share of the Settlement Payment shall be determined by the Claims Administrator as follows:

   (1)   Each Qualified Class Member's proportionate share of the Settlement Payment shall be determined according to the following formula as calculated by the Claims Administrator:

      (a)   For each "Pay Period" in which the Qualified Class Member held a Covered Position during the Recovery Period, multiply the Qualified Class Member's "Base Earnings" for that Pay Period by the appropriate "State Factor" for that Pay Period; the sum of the resulting calculations is the "Individual Class Member Numerator" for each such Qualified Class Member.

   (2)   Add all Qualified Class Members' Individual Class Member Numerators to obtain the "Total Class Member Denominator."

(3)    To determine the "Resulting Decimal" for the Qualified Class Member, divide the Qualified Class Member's Individual Class Member Numerator by the Total Class Member Denominator.

(4)    To determine the amount to be paid to the Qualified Class Member, multiply the Resulting Decimal by the total amount available for distribution from the Net Settlement Payment.

(F)    The following definitions shall apply to the terms described in the formula set forth in this Section 3.4.

(1)    "Base Earnings" means, for Qualified Class Members who received payroll earnings code E001 and/or E005, the base salary for each Pay Period during the Recovery Period, as the base salary changed from time to time during the Recovery Period. For Qualified Class Members who received payroll earnings code E371, "Base Earnings" means the sum of the daily payments for each day worked during each Pay Period during the Recovery Period.

(2)    "Pay Period" shall mean any semimonthly period in which an employee had positive Base Earnings.

(3)    "State Factor," which accounts for the fact that the measure of allowable damages and the liability standard varies with the applicable state law, shall be determined as follows:

(a)    All Class Members will have a State Factor of 3 for Pay Periods worked in a Covered Position Code in California during the Recovery Period.

(b)    All Class Members will have a State Factor of 1 for Pay Periods worked in a Covered Position Code in all states other than California during the Recovery Period.

(4)    For purposes of this Agreement, the state of work is the state of the location to which the employee is assigned by IBM Real Estate Site Operations for internal accounting purposes.

(G)    IBM and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

**3.5    Taxability of Settlement Payments.**

(A)    For tax purposes, 50% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as wages and 50% of such payments shall be treated as liquidated damages and interest.

(B)     Payments treated as wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.  Payments of attorneys' fees and costs/expenses pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.  Any service payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)     Defendant shall pay the employer's share of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A).  Such tax obligations shall be in addition to IBM's obligation to pay the $7,500,000.00 described in Section 3.1.

(D)     Class Members will be solely responsible for all taxes, interest and penalties owed by the Class Members with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendant and the Claims Administrator harmless from and against any and all taxes and interest as a result of a Class Member's failure to timely pay such taxes.  Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

## 4.     RELEASE

### 4.1     Release of Claims.

(A)     By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs and each individual Class Member who does not timely opt out pursuant to Section 2.4 forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present matters, claims, demands, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation,

in equity or otherwise, and whether arising under federal, state, or other applicable law, which any such Class Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon or arise out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation and that arose during any time that such Class Member worked in a Covered Position up until and including December 31, 2008 ("Released Claims"). The Released Claims include without limitation claims asserted in the Litigation and any other claims based on alleged misclassification under state or federal law governing overtime pay, exempt status, denial of meal periods and rest breaks, denial of waiting time, on-call, standby time, or reporting time payments, denial of spread of hours pay, failure to pay wages upon termination, failure to provide itemized wage statements, unfair competition, failure to make payments due to Class Members had they been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Employee Retirement Income Security Act ("ERISA"), the Fair Labor Standards Act ("FLSA"), the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 218, 218.5, 226, 510, 512, 1174, 1174.5, and 1194, Cal. Wage Order No. 4, the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, 8-6-106, and 8-6-118, the Colorado Minimum Wage Order No. 22, the Connecticut Minimum Wage Act, Conn. Gen. Stats. §§ 31-58 *et seq.*, 31-13a, 31-60, 31-66, 31-68, and 31-76c, the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 115/1 *et seq.* and the regulations promulgated thereunder, 820 Ill. Comp. Stat. §§ 105/4a and 105/12a, Ill. Admin. Code §§ 210.100 *et seq.* and 210.770, the Kentucky Wage and Hour Laws, KRS §§ 337.010 *et seq.*, 337.020, 337.055, 337.060, 337.070, 337.285, 337.320, and 337.385(1), Md. Code Ann. Labor & Employment Art. §§ 3-401 *et seq.*, 3-415, 3-420, and 3-424, 21 Mass. Gen. Laws ch. 151 §§ 1A *et seq.*, 1B and 15, the Michigan Minimum Wage Law, Mich. Comp. Laws § 408.371, *et seq.*, Mich. Comp. Laws § 408.471, *et seq.*, the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-2 *et seq.*, 34:11-56a *et seq.*, 34:11-56a4, and 34:11-56a20, the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.* and 663(1), the New York Wage Payment Act, New York Labor Law § 190 *et seq.*, New York State Department of Labor regulations, 12 N.Y.C.R.R. part 142, N.C. Gen. Stat. §§ 95-25.1 *et seq.*, 95-25.6, 95-25.7, 95-25.7A, 95-25.8, 95-25.13, 95-25.15 and 95-25.22, 13 N.C. Admin. Code §§ 12.0801-12.0807, Ohio Rev. Code Ann. §§ 4111.01 *et seq.*, 4111.08, 4111.03, 4111.10, and 4113.15, 43 Pa. Stat. §§ 333.103 *et seq.*, 333.104(c), 333.108 and 333.113, Wis. Stat. §§ 103.001 *et seq.* and 103.13, Wis. Admin. Code §§ DWD 274.01 *et seq.*, DWD 274.06 and DWD 274.07, and Wash. Rev. Code Sec. 49.46.090, 49.46.100, 49.46.130, and 49.46.070, and the statutes and regulations of all other states relating to the foregoing.

(B)   Each Class Member who does not timely opt out in accordance with the procedures set forth in Section 2.4 is deemed to have acknowledged that this Agreement is intended to include in its effect all claims asserted in or based upon

the facts alleged in the Litigation that arose during any time up until and including December 31, 2008, including both asserted and unasserted claims, and including those claims that each or any Class Member does not know or suspect to exist in his or her favor against Defendant.  With respect to the Released Claims, the Plaintiffs and any Class Members who worked in a Covered Position in California at any time during the Recovery Period and who do not timely opt out of this Agreement waive all rights and benefits afforded by section 1542 of the Civil Code of the State of California, understanding the significance of that waiver. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

**4.2**   **Release of Fees and Costs for Settled Matters.**  Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs/expenses associated with Class Counsel's representation of Plaintiffs and the Class.  Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs/expenses associated with Class Counsel's representation of these individuals.

**4.3**   **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**4.4**   **Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement.  The

NYI-4216015v7

Parties understand and agree that this Agreement and all exhibits thereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

5.     **PLAN OF DISTRIBUTION**

(A)     Within 65 calendar days after the end of the Opt-Out Period, and based on the Claims Administrator's identification for IBM of Qualified Class Members by employee serial number within 33 calendar days after the end of the Opt-Out Period, IBM will provide the Claims Administrator and, subject to the Stipulated Protective Order in this case (Docket Entry 52), Class Counsel with a list, in electronic form, of the names and last known addresses of all Qualified Class Members, together with information regarding their compensation and state(s) of work for their respective periods of employment within the Recovery Period while working in a Covered Position. With the exception of addresses, this data, and any other data provided by IBM to the Claims Administrator pursuant to this Agreement, shall be conclusively presumed to be accurate. Within 15 calendar days after the entry of the order granting final approval, IBM will give a report to the Claims Administrator and Class Counsel regarding: 1) interest earned on the Settlement Payment through and including the date 15 calendar days after entry of the order granting final approval; 2) the reasonable costs associated with investing the Settlement Amount; 3) the estimated taxes on the interest earned on the Settlement Amount.

(B)     Within 20 calendar days after the Effective Date, the Claims Administrator shall provide to Class Counsel and Defendant's Counsel a proposed plan of distribution of the Settlement Payment, containing the names of and proposed distribution to each Qualified Class Member ("Plan of Distribution"). At the same time, the Claims Administrator shall also provide an itemized list of its costs and expenses and all other amounts to be deducted from the Settlement Payment. Each Party shall have 7 calendar days from receipt of the Plan of Distribution to serve the other Party and the Claims Administrator with any corrections to the Plan of Distribution, or to comment on the administrative costs and expenses or other deductions. The Claims Administrator shall make any changes to the Plan of Distribution agreed upon by the Parties and then serve the final Plan of Distribution within 5 calendar days of receiving such corrections.

(C)     If the Parties disagree over the Plan of Distribution, they will submit any disagreement to the Court for resolution. Any dispute over administrative costs and expenses shall also be submitted to the Court.

(D)     Within 33 calendar days after the Effective Date, or the date on which the Court resolves any disputes under Section 5(C), whichever is later, IBM shall transfer the Settlement Payment, less an amount equal to the gross wage payments to be made to Qualified Class Members, to the Claims Administrator. Within 55 calendar days after the Effective Date, IBM shall deliver to the Claims

Administrator individual wage payment checks, less withholdings as specified in Section 3.5(B), for each Qualified Class Member.

(E)     The Claims Administrator will make every effort to mail to all Qualified Class Members their wage and non-wage payments under this Agreement within 60 calendar days after the Effective Date. The Claims Administrator shall use reasonable efforts to make a second mailing to Qualified Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using Social Security numbers to obtain better address information and, for Qualified Class Members whose payment is greater than $100, attempting to call such Qualified Class Members. The Claims Administrator shall provide Class Counsel and Defendant's Counsel a declaration describing the efforts it took to reach Qualified Class Members who have not cashed checks. Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator. All efforts of the Claims Administrator to send checks to Qualified Class Members shall cease no later than 2 months after the Claims Administrator makes the initial mailing of checks.

## 6.     PUBLIC STATEMENTS; CLASS MEMBER INQUIRIES; NO SOLICITATION

### 6.1     Public Statements; Class Member Inquiries

(A)     The Parties agree that no press release regarding this matter will be issued by either Party.

(B)     IBM's, Plaintiffs' and Class Counsel's responses to any press inquiries regarding this matter must be limited to a joint response statement agreed upon by the Parties and/or the Notice and/or other material agreed upon by the Parties. Nothing in this clause shall prevent Defendant or Plaintiffs or Class Counsel from giving sworn testimony as required by law or other legal process.

(C)     As of the date of the Order Granting Preliminary Approval, Class Counsel agree to remove from, and will not restore to, the website Class Counsel maintains regarding the Litigation, www.secondwagecaseagainstIBM.com (hereinafter, "Website"), any reference to or information about the Litigation, subject to the following exceptions: Class Counsel may post on the Website general background information agreed upon by Defendant regarding claims administration and processing and copies of the Court-approved Notice and the Claim Form and Release. The Website will be taken down entirely, and not restored, within 180 days after the initial mailing of settlement checks.

(D)     Class Counsel and Plaintiffs Michael Danieli, Jose Silva, Steve March, Terri Golkowski, Bill Jacobs, Joseph Glavan III, Anthony Moore, Sr., Charles Antonelli, David Post, Thomas Ottogalli, Patrick McCambridge, Robert Nulty, James Caldwell, Barbara Luca, Timothy Rollins, Melanie Maruca, and Darryl Habeck agree (i) to take down all websites (other than the Website), blogs, or blog postings referring to the Litigation as of the date the Court issues the Order

Granting Preliminary Approval, and (ii) not to create new such websites, blogs, or blog postings. The website of each Class Counsel, however, may link to the Website; the link may contain only the caption of the case and a statement that information about the case, the settlement, and the administration of settlement payments is available on the Website.

(E)     Class Counsel, Plaintiffs, Defendant, and Defendant's Counsel agree not to discourage Class Members from seeking payment from the Settlement Payment.

(F)     Nothing contained in this Section shall prevent Class Counsel from providing legal advice to Class Members.

7.     **REPRESENTATIONS SECTION; GOLKOWSKI AGENCY CHARGE.** IBM represents and affirms that it will exercise reasonable diligence and act in good faith to provide accurate data to the Claims Administrator. Similarly, IBM represents and affirms that it has exercised reasonable diligence and acted in good faith during the discovery process of the Litigation to provide accurate data to Class Counsel about the Class Members. IBM further represents and affirms that, as to representations that it made prior to mediation in the Litigation about the content of data that it produced in discovery, such representations were accurate to the best of IBM's information and belief. Plaintiffs and Class Counsel represent that, to the best of their knowledge and other than the Litigation, no Class Member has initiated any Court or agency proceeding involving Released Claims except an agency proceeding initiated by Plaintiff Golkowski with the Connecticut Department of Labor (the "Golkowski Charge"). Plaintiff Golkowski agrees to withdraw the Golkowski Charge and to seek the agency's approval of such withdrawal. If the Connecticut Department of Labor has not approved the withdrawal of the Golkowski Charge by the end of the Opt-Out Period, Plaintiff Golkowski shall be deemed to have opted out of the Litigation pursuant to Section 2.4 effective as of the end of the Opt-Out Period.

8.     **MISCELLANEOUS**

8.1     **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

8.2     **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. The Parties agree that this Agreement shall not affect the enforceability of any independent separation or release agreement entered into by any Class Member.

8.3     **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**8.4**   **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**8.5**   **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**8.6**   **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**8.7**   **Blue Penciling.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**8.8**   **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such Federal law shall govern.

**8.9**   **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase IBM's payment obligations hereunder.

**8.10**   **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**8.11**   **Counterparts.** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument.

**8.12**   **Facsimile or Emailed Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be

deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**8.13** **Signature by Class Counsel.** Class Counsel represent, by their signatures below, that they have been authorized by Plaintiffs to sign this Agreement on Plaintiffs' behalf.

DATED: October 15, 2009    INTERNATIONAL BUSINESS MACHINES CORPORATION

By: _Alee A Berman_

Its: _Associate General Counsel_

[The remainder of this page is intentionally left blank.]

DATED: October 15 2009   ALTSHULER BERZON, LLP

By: _____
   James M. Finberg

James M. Finberg
Eve H. Cervantes

*Attorneys for Plaintiffs and proposed class members*

DATED: October __, 2009   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By: _____
   Jahan C. Sagafi

Kelly Dermody
Rachel J. Geman
Jahan C. Sagafi

*Attorneys for Plaintiff _____*

DATED:  October __, 2009   RUDY, EXELROD & ZIEFF, LLP


By: _____
   Steven G. Zieff

Steven G. Zieff
David A. Lowe
Patrice Goldman
John T. Mullan
Kenneth J. Sugarman

*Attorneys for Plaintiff _____*

DATED: October __, 2009          ALTSHULER BERZON, LLP


By: _____
         James M. Finberg

James M. Finberg
Eve H. Cervantes

*Attorneys for Plaintiff* _____

DATED: October 10, 2009          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By: _____
         Jahan C. Sagafi

Kelly Dermody
Rachel J. Geman
Jahan C. Sagafi

*Attorneys for Plaintiff* _____

DATED:  October __, 2009          RUDY, EXELROD & ZIEFF, LLP


By: _____
         Steven G. Zieff

Steven G. Zieff
David A. Lowe
Patrice Goldman
John T. Mullan
Kenneth J. Sugarman

*Attorneys for Plaintiff* _____

DATED: October __, 2009                ALTSHULER BERZON, LLP


                                        By: _____
                                              James M. Finberg

                                        James M. Finberg
                                        Eve H. Cervantes

                                        *Attorneys for Plaintiff* _____

DATED: October __, 2009                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                        By: _____
                                              Jahan C. Sagafi

                                        Kelly Dermody
                                        Rachel J. Geman
                                        Jahan C Sagafi

                                        *Attorneys for Plaintiff* _____

DATED:  October 15 2009                RUDY, EXELROD & ZIEFF, LLP


                                        By: _____
                                              Steven G. Zieff

                                        Steven G. Zieff
                                        David A. Lowe
                                        Patrice Goldman
                                        John T. Mullan
                                        Kenneth J. Sugarman

                                        *Attorneys for Plaintiff* _____

DATED: October 15, 2009          LEWIS, FEINBERG, LEE, RENAKER & JACKSON, PC

                                 By: _____
                                         Todd F. Jackson

                                 Todd F. Jackson

                                 *Attorneys for Plaintiff* _____

DATED: October __, 2009          OUTTEN & GOLDEN LLP

                                 By: _____
                                         Adam F. Klein

                                 Adam F. Klein
                                 Justin M. Swartz

                                 *Attorneys for Plaintiff* _____

DATED: October __, 2009          SPIRO MOSS BARNESS HARRISON & BARGE, LLP

                                 By: _____
                                         Ira Spiro

                                 *Attorneys for Plaintiff* _____

DATED: October __, 2009          LEE & BRAZIEL

                                 By: _____
                                         J. Derek Braziel

                                 *Attorneys for Plaintiff* _____

DATED: October __, 2009          BRUCKNER BURCH, PLLC

                                 By: _____
                                         Richard Burch

                                 *Attorneys for Plaintiff* _____

23

DATED: October ___, 2009           LEWIS, FEINBERG, LEE, RENAKER & JACKSON, PC


By: _____
         Todd F. Jackson

Todd F. Jackson

*Attorneys for Plaintiff _____*

DATED: October 15, 2009            OUTTEN & GOLDEN LLP


By: _____
         Adam F. Klein   Justin M. Swartz

Adam F. Klein
Justin M. Swartz

*Attorneys for Plaintiff _____*

DATED: October ___, 2009           SPIRO MOSS BARNESS HARRISON & BARGE, LLP


By: _____
         Ira Spiro

*Attorneys for Plaintiff _____*

DATED: October ___, 2009           LEE & BRAZIEL


By: _____
         J. Derek Braziel

*Attorneys for Plaintiff _____*

DATED: October ___, 2009           BRUCKNER BURCH, PLLC


By: _____
         Richard Burch

*Attorneys for Plaintiff _____*

DATED: October ___, 2009        LEWIS, FEINBERG, LEE, RENAKER & JACKSON, PC


By: _____
         Todd F. Jackson

Todd F. Jackson

*Attorneys for Plaintiff _____*

DATED: October ___, 2009        OUTTEN & GOLDEN LLP


By: _____
         Adam F. Klein

Adam F. Klein
Justin M. Swartz

*Attorneys for Plaintiff _____*

DATED: October 16 2009      SPIRO MOSS ~~BARNESS HARRISON & BARGE~~, LLP


By: _____
         Ira Spiro

*Attorneys for Plaintiff _____*

DATED: October ___, 2009        LEE & BRAZIEL


By: _____
         J. Derek Braziel

*Attorneys for Plaintiff _____*

DATED: October ___, 2009        BRUCKNER BURCH, PLLC


By: _____
         Richard Burch

*Attorneys for Plaintiff _____*

23

DATED:  October __, 2009          LEWIS, FEINBERG, LEE, RENAKER & JACKSON, PC


By: _____
           Todd F. Jackson

Todd F. Jackson

*Attorneys for Plaintiff* _____

DATED:  October __, 2009          OUTTEN & GOLDEN LLP


By: _____
           Adam F. Klein

Adam F. Klein
Justin M. Swartz

*Attorneys for Plaintiff* _____

DATED:  October __, 2009          SPIRO MOSS BARNESS HARRISON & BARGE, LLP


By: _____
           Ira Spiro

*Attorneys for Plaintiff* _____

DATED:  October 16, 2009          LEE & BRAZIEL

By: _____
           J. Derek Braziel

*Attorneys for Plaintiff* _____

DATED:  October __, 2009          BRUCKNER BURCH, PLLC


By: _____
           Richard Burch

*Attorneys for Plaintiff* _____

DATED:  October __, 2009      LEWIS, FEINBERG, LEE, RENAKER & JACKSON, PC

By: _____
           Todd F. Jackson

Todd F. Jackson

*Attorneys for Plaintiff* _____

DATED:  October __, 2009      OUTTEN & GOLDEN LLP

By: _____
           Adam F. Klein

Adam F. Klein
Justin M. Swartz

*Attorneys for Plaintiff* _____

DATED:  October __, 2009      SPIRO MOSS BARNESS HARRISON & BARGE, LLP

By: _____
           Ira Spiro

*Attorneys for Plaintiff* _____

DATED:  October __, 2009      LEE & BRAZIEL

By: _____
           J. Derek Braziel

*Attorneys for Plaintiff* _____

DATED:  October __, 2009      BRUCKNER BURCH, PLLC

By: _____ /By permission
           Richard Burch

*Attorneys for Plaintiff* _____

23

DATED: October 15, 2009   GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN

By: _____
    David Borgen

*Attorneys for Plaintiff* _____

DATED: October __, 2009   COHELAN KHOURY & SINGER


By: _____
    Michael Singer

*Attorneys for Plaintiff* _____

DATED: October __, 2009   PALAY LAW FIRM


By: _____
    Daniel Palay

*Attorneys for Plaintiff* _____

DATED: October __, 2009   WERMAN LAW OFFICE, P.C.


By: _____
    Douglas Werman

*Attorneys for Plaintiff* _____

NYI-4216015v7

DATED: October __, 2009

GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN

By: _____
      David Borgen

*Attorneys for Plaintiff* _____

DATED: October 16 2009

COHELAN KHOURY & SINGER

By: *Michael D. Singer*
      Michael Singer

*Attorneys for Plaintiff* Jose Silva

DATED: October __, 2009

PALAY LAW FIRM

By: _____
      Daniel Palay

*Attorneys for Plaintiff* _____

DATED: October __, 2009

WERMAN LAW OFFICE, P.C.

By: _____
      Douglas Werman

*Attorneys for Plaintiff* _____

24

NYI-4216015v7

DATED: October __, 2009          GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
                                 DARDARIAN

                                 By: _____
                                         David Borgen

                                 *Attorneys for Plaintiff* _____

DATED: October __, 2009          COHELAN KHOURY & SINGER

                                 By: _____
                                         Michael Singer

                                 *Attorneys for Plaintiff* _____

DATED: October /6, 2009          PALAY LAW FIRM

                                 By: _____
                                         Daniel Palay

                                 *Attorneys for Plaintiff* _____

DATED: October __, 2009          WERMAN LAW OFFICE, P.C.

                                 By: _____
                                         Douglas Werman

                                 *Attorneys for Plaintiff* _____

24

DATED:  October __, 2009

GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN

By: _____
      David Borgen

*Attorneys for Plaintiff* _____

DATED:  October __, 2009

COHELAN KHOURY & SINGER

By: _____
      Michael Singer

*Attorneys for Plaintiff* _____

DATED:  October __, 2009

PALAY LAW FIRM

By: _____
      Daniel Palay

*Attorneys for Plaintiff* _____

DATED:  October __, 2009

WERMAN LAW OFFICE, P.C.

By: _____
      Douglas Werman

*Attorneys for Plaintiff* _____

NYI-4216015v7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
MICHAEL DANIELI, et al., on behalf of   )    No. 08 CV 3688 (SHS)
themselves and those similarly situated,   )

                       )    ECF CASE
          Plaintiff,     )

                       )
          -against-     )

                       )
INTERNATIONAL BUSINESS     )
MACHINES CORPORATION,     )

                       )
          Defendant.     )
------------------------------------------------- X

## APPENDIX TO JOINT STIPULATION OF SETTLEMENT
## AND RELEASE OF ALL CLAIMS

1.      ABEBE, AZANIA
2.      ABERNATHY, CHUCK
3.      ABUBAKER, THAHIR
4.      ADAMS, KAREN
5.      AGUILERA, IVETTE
6.      AHLIN, ROBERT
7.      AHUJA, SALIL
8.      AL-MUABER, SHAKER
9.      AMADRIL, STEVEN
10.    AMMANABROLU, VENKATA
11.    APPALLA, MALINI
12.    ARCHAMBAULT, ADAM
13.    ASBURY, GAIL
14.    AUTENREITH, FRED
15.    BAHL, SHIKHA
16.    BANDI, SUNEEL
17.    BANKHEAD, LUKE
18.    BANNON, MICHAEL
19.    BARCO, MANUEL
20.    BARTKOWIAK, KATHLEEN
21.    BARTYS, SUZANNE
22.    BEEKS, ERIC
23.    BEES, RICHARD
24.    BEHLER, DAVID
25.    BELISLE, SCOTT
26.    BENNETT, BRENT

27.    BIERCE, ANNE
28.    BLATT, JOHN
29.    BLOOM, MATT
30.    BOYLE, DANIEL
31.    BRASINGTON, M
32.    BREHM, HOWARD
33.    BRILLAT, BENJAMIN
34.    BROWN, ANDREW
35.    BROWN, ANTHONY
36.    BROWN, DOUGLAS
37.    BROWN, LORELEE
38.    BROWN, MARK
39.    BROWNING, CRAIG
40.    BRUMLEY, GARRIN
41.    BRUNICK, DAVID
42.    BRYAN, RON
43.    BUDGE, BRUCE
44.    BUI, LIEN
45.    BUKHARI, SYED
46.    BURNETT, JOE
47.    BUTLER III, EDGAR
48.    BUTZLAFF, CHERYL
49.    CAIN, NICOLA
50.    CALANDRA, JEANNINE
51.    CALLA, SAURABH
52.    CALTRIDER, JOHN
53.    CARLSTON, DAVID
54.    CARPENTER, BRENDA
55.    CASTILLO, ISMAEL
56.    CASWELL, THOMAS
57.    CATHRO, PAUL
58.    CAVELL, JONATHAN
59.    CHANG, PAUL
60.    CHASE, ERROL
61.    CHAU, THOMAS
62.    CHAUDHARY, MUKESH
63.    CHAUHAN, RAJESH
64.    CHIQUITO, PAULO
65.    CHURCH, ROSS
66.    CLARK, CARMEN
67.    CLAYTON, ALCIDE
68.    CLEMENTE, THOMAS
69.    COLE, LARRY
70.    COLEMAN, RONALD
71.    COLLINS JR, MELVIN
72.    COLLURA, SANTO

2

73.    COLQUHOUN, ROBERT
74.    COOKE, STEPHEN
75.    CORDOVA, RACHEL
76.    CORMIER, JEFFREY
77.    COSTA, ALVARO
78.    CRAWFORD, RICHARD
79.    CRISP II, LEON
80.    CULKOWSKI NAIKO, KRISTIN
81.    DANG, LOC
82.    DAPRINO, MICHAEL
83.    DAVEY JR, PAUL
84.    DAVIS, MATHEW
85.    DE MIZIO, DAVID
86.    DENG, RICHARD
87.    DENNY II, KEVIN
88.    DEUTSCH, ROBERT
89.    DI SPALTRO, DANIEL
90.    DIMSEY JR, JOHN
91.    DOMANICO, DARYLE
92.    DOMBROWSKI, THOMAS
93.    DORMAN, MICHELLE
94.    DU, YING
95.    DUETHMAN, JON
96.    DUGUID, MARGARET
97.    EAST, ANDREA
98.    ECK, PETER
99.    EDEL, MICHAEL
100.   EDWARDS, JAMES
101.   ELIOT, SUSAN
102.   ELISSEEVA, NADEJDA
103.   FALKENSTINE, DARBY
104.   FARAGHER, ALAN
105.   FELLOWS, SCOTT
106.   FERNANDEZ, JOSE
107.   FERRARA, JEFFREY
108.   FILIPPONI, CARL
109.   FIRLEY, MARK
110.   FIRTH, KRISTIN
111.   FORD, RENE
112.   FORD, VIVIAN
113.   FRASCA, MICHAEL
114.   FRAZIER, SCOTT
115.   FURLAND, THOMAS
116.   GALASCO, SHIRLEY
117.   GALLARDO, ROLANDO
118.   GALLECE, JAMES

3

119. GANJAVI, VAHID
120. GARCIA, SALVADOR
121. GARDNER, WILLIAM
122. GARRICK-FOLTYN, KERRIN
123. GAUTAM, JAYASREE
124. GEORGE, SUSAN
125. GERBER, GARY
126. GERLACH, RODERIC
127. GILL, STEPHEN
128. GOEBEL, DAN
129. GOODMAN, GERALD
130. GORDON, PAUL
131. GOUDREAU, CHRISTOPHER
132. GRAY, PRECIOUS
133. GROOM, WILLIAM
134. GUATNEY, LEROY
135. GUBBA, SUDHEER
136. GUPTA, ASHISH
137. HAMDAN, SAMEER
138. HAMEL, CHARLES
139. HAND, JESSE
140. HARMON, MARY
141. HARR, MICHELLE
142. HARRINGTON, GWENDOLYN
143. HARTMAN, HEATHER
144. HAWKINS, STEPHEN
145. HAY, WILLIE
146. HAYCOCK, OBED
147. HENDERSON, LYLE
148. HERMOSILLO, CHRISTOPHER
149. HICKS, LESTER
150. HIGGINS, HEATHER
151. HILL, DUANE
152. HOLLADAY, CHRISTOPHER
153. HUNTLEY, CARLOS
154. HUSEBY, JOHN
155. HUTCHEON, GRAEME
156. HYMAN, SCOTT
157. IDE, YASUYO
158. INDELICATO, JILL
159. IYENGAR, SRINIVAS
160. JAMES, BARRY
161. JIMENEZ, MALLERLY
162. JOHNS, AMY
163. JOHNSON, LISA
164. JONES, SCOTT

165. JORDAN, STEVEN
166. JOYCE, TERRENCE
167. KAMMAN, MARCIA
168. KARR, JEFFREY
169. KEARNEY, HOWARD
170. KEDARISETTY, ESWARA TAMMA RAO
171. KELLEMS, CARY
172. KELLY, D
173. KEMMER, LAURENCE
174. KENNETT, DAVID
175. KEPKOVA, JANA
176. KHAN, ADNAN
177. KHAN, DS RUBY
178. KHAN, REHANA
179. KHERA, KARAN
180. KIGER, JOHN
181. KIM, LYDIA
182. KIMBALL, MATTHEW
183. KITCHENS, OTTO
184. KNOBLAUCH, THERESA
185. KOLBASOWSKI, JAMES
186. KOOGLE, RICHARD
187. KRAWIECKI, CATHERINE
188. KROUSE, DAVID
189. KUHLMAN, BRIAN
190. LANARI, MICHAEL
191. LANGE, JULIE
192. LARSEN, DAVID
193. LAVENDER, KENNETH
194. LAWRENCE, SCOTT
195. LEE, FRANK
196. LEE, SHU-JUAN
197. LEE, TEDDY
198. LEITL, HERMAN
199. LEVINTOV, LEONID
200. LEWITT, RITA
201. LIAKOPOULOS, DEANA
202. LIU, LISA
203. LLATA, GEORGE
204. LONGBOTTOM, STEPHEN
205. LYNCH, MICHAEL
206. MA, HENGGUO
207. MADAN, ANUJ
208. MADHAMSHETTI, SRINIVAS
209. MAK, SUE-WEN
210. MALHOTRA, SAURABH

NYI-4216015v7

211. MALONE, CHRISTOPHER
212. MANGAL, MANOJKUMAR
213. MANTIPLY, TRAVIS
214. MARTIN, DANIEL
215. MARTINEZ, BERNIE
216. MATTHEWS, MARK
217. MATYAZ, MARY
218. MCCLELLAN, JANET
219. MCINNIS, SUSAN
220. MCPETERS, DENISE
221. MEARS, DEBRA
222. MEHAR, POOJA
223. MEHTA, KAMAL
224. MELGOZA, PAUL
225. MESSIER, STEVEN
226. METCALF, MARIANNE
227. METZGER, TIMOTHY
228. MICHALAK, ALICE
229. MICHALOPOULOS, GEORGE
230. MICHRA, SHARANDEEP
231. MILLBURG, MICHAEL
232. MILLER, JOHN
233. MILLS, KEVIN
234. MINASSIAN, VAHE
235. MINKARA, SAMER
236. MINNEMAN, GREGORY
237. MIREAULT, ROBBIE
238. MOLINARO, KENNETH
239. MONARES, ALFRED
240. MOON, TODD
241. MOORE, JASON
242. MORGAN, JOHN
243. MUCHA JR., JOSEPH
244. MUENCH, RICHARD
245. MUSTE, CRISTIANA
246. NAIR, VIJITH
247. NEELLEY, RICHARD
248. NEILL, JOYCE
249. NEILY, RYAN
250. NISWANDER, DANNY
251. NOSTRAME, FRANCIS
252. O'BYRNE, PATRICIA
253. O'LOUGHLIN, RONALD
254. OGLESBEE, ROBERT
255. OJO, MICHAEL
256. OLCOTT, RICHARD

NYI-4216015v7

257. OLIVERA, MARIA
258. OTRADOVEC, TOM
259. OVOD-EVERETT, TOBERMORY
260. OWEN, CHARLES
261. PANY, JEFFREY
262. PATEL, JITENDRA
263. PATEL, RAJESH
264. PATEL, SANDIP
265. PATERNOSTRO, JASON
266. PATI, SHYAMSUNDER
267. PATRICK, EVERETT
268. PAUL, SCOTT
269. PEDERSON, SCOTT
270. PETERS, FARLEY
271. PETERSON, DOUG
272. PETTENGILL, GREGORY
273. PHILLIPS, JACK
274. PIERCE, GARY
275. PILGRIM, GAIL
276. PIXLEY, SHANNON
277. PODILA, PRAVEEN
278. POLING, JEANNIE
279. POLIVICK, WILLIAM
280. POTEMPA, JEREMY
281. PRODOEHL, JERRY
282. RAAD, EDWARD
283. RAGAN, STEVEN
284. RAMNARAYAN, LALGUDI
285. RAO, RAJI
286. REINEKE, DAVID
287. RENSINK II, RUSSELL
288. ROBERTS, KATHIE
289. ROBERTS, REBECCA
290. ROBERTS, SCOTT
291. ROBINSON, JOHN
292. RODRIGUEZ, CHRISTINE
293. ROSADO, ROGER
294. ROSEN, BARRY
295. RUSSELL, JOHN
296. RYAN, PATRICK
297. SARANGARAJAN, KAVITHA
298. SCHIEGOLEIT, CYNTHIA
299. SCHMIDT, MARTIN
300. SCHNABEL, MARK
301. SCHOTTLER, RICHARD
302. SEEDORFF, MICHAEL

303. SEKANDARI, MOSTAFA
304. SELSKY, PAUL
305. SENITTA, WAYNE
306. SEQUEIRA, GLENVILLE
307. SHAFER III, RAYMOND
308. SHELSTAD, JEFFREY
309. SHEMEL, ANDREA
310. SHORT, WILLIAM
311. SHUKLA, SAURABH
312. SIMPSON, DAVID
313. SINGH, HARMEET
314. SINGH, NAVJEET
315. SMALLEY, THOMAS
316. SMITH, ETHAN
317. SMITH, TRISHA
318. SNEDEN, JEFFREY
319. SOCHACKI, WILLIAM
320. SOCHAT, CHARLES
321. SOKOL, NORMAN
322. SORICELLI, JOHN
323. SPERRY, SCOTT
324. SRIVASTAVA, ANINDITA
325. STEATES, GUNNAR
326. STEINMETZ, GREG
327. STELLABOTTE, FRED
328. STEPHENS, RAYMOND
329. STILSON, DELL
330. STONE, DALE
331. STONE, MELISSA
332. STORCH, ERIC
333. STROH, PAUL
334. SURAKANTI, SHASHIKANTH
335. SWANEY, LISA
336. SWEENOR, DAVID
337. SYNOOR BALARAMAN, SRINIVASA RAGHAVAN
338. TALBOT, JEAN
339. TALEWSKY, GREGG
340. THINNAKKAKATH, GHOSH
341. THOMAS, CHRISTOPHER
342. TOELSIN, JEFFREY
343. TONG, BRITNEY
344. TORELLO, SHARON
345. TRAN, DENNIS
346. TURCO, JOE
347. VACINEK, BRYAN
348. VALERIO, TONY

8

349.  VAN BUREN, BENJAMIN
350.  VANDERMOLEN, SHERRY
351.  VANWAGNER, CHRISTOPHER
352.  VARCO, KATHLEEN
353.  VERGANS, JEAN-MARC
354.  VICCICA, JUDITH
355.  VIDALES, JOHANNA
356.  WAJIHUDDIN, SUHEL
357.  WALIA, SUMEET
358.  WANNENWETSCH, ANN
359.  WARNER, DAVID
360.  WARRIX, CHARLES
361.  WATSON, MICHAEL
362.  WATTS, DAVID
363.  WEBB IV, JOHN
364.  WEISSMAN, JOHN
365.  WELLS, ANDREW
366.  WENG, XIANGYU
367.  WHEELER, CHRISTOPHER
368.  WHITE, CHARLES
369.  WHITE, DEBRA
370.  WHITE, HEIDI
371.  WIEBEN, NANCY
372.  WILKINS, THOMAS
373.  WILLEY, DOUGLAS
374.  WILLIAMS, JULIAN
375.  WILLIARD, CHRISTY
376.  WILLIS, BARBARA
377.  WINSON, ROLAND
378.  WITMAN, DAVID
379.  WOLF, CHRISTIAN
380.  YUNITS JR, PAUL
381.  ZARIC, MARK
382.  ZHOU, DIANA

9