James M. Finberg (admitted *pro hac vice*)
Eve H. Cervantez (admitted *pro hac vice*)
Peder J. Thoreen (admitted *pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone: (415) 421-7151
Facsimile:  (415) 362-8064
Email:  jfinberg@altber.com
Email:  ecervantez@altber.com
Email:  pthoreen@altber.com

Lead Counsel for Plaintiffs and Class and Collective Action Members
[additional counsel for Plaintiffs and Class and Collective Action
Members on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MICHAEL DANIELI,** *et al.*, **on behalf of themselves and those similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**INTERNATIONAL BUSINESS MACHINES CORPORATION,**<br><br>**Defendant.** | 08 CV 3688 (SHS)<br><br>**ECF CASE**<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES**<br><br>**Hon. Sidney H. Stein**<br><br>Hearing Date: March 12, 2010<br><br><br>Hearing Time: 10:00 A.M. |

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................1

FACTUAL STATEMENT .............................................................................2

    A.    This Case Was Large and Complex....................................................2

    B.    Class Counsel Conducted a Pre-Filing Investigation.................................3

    C.    After Filing the Complaint, Class Counsel
          Thoroughly Investigated the Facts Through Both
          Formal Discovery and Informal Interviews.................................................4

          1.    Class Counsel Filed a Complaint
                  and an Amended Complaint...........................................................4

          2.    Class Counsel Propounded Written Discovery..............................4

          3.    With the Help of an Expert, Class Counsel
                  Analyzed IBM's Payroll Data.........................................................5

          4.    Class Counsel Interviewed Over 450 witnesses ............................5

          5.    Class Counsel Defended Nine Depositions in this Action
                  and took Five in *Rosenburg* ...........................................................5

    D.    Class Counsel Prepared and Served (1) A Motion for FLSA
          Collective Action Designation and Supporting Papers
          (2) Papers in Opposition to Four Motions for Summary Judgment,
          and (3) Briefs Regarding Evidentiary Issues. ............................................6

    E.    The Settlement Negotiations Were
          Hard Fought and at Arms' Length.............................................................6

    F.    Class Counsel Have Been Actively Involved in the
          Settlement Approval and Claims Administration Processes ......................7

ARGUMENT.................................................................................................8

I.    THE ATTORNEYS' FEE CLASS COUNSEL SEEK IS
        REASONABLE UNDER EITHER THE COMMON FUND DOCTRINE
        OR THE LODESTAR APPROACH. ....................................................8

A.    Class Counsel's Requested Attorneys' Fee of 30% of the Settlement Fund
is Reasonable Under the Common Fund Doctrine ......................................8

    1.    Courts Have Recognized That Counsel Who Have Obtained a
Common Fund Can Seek Fees and Costs From That Fund.............9

    2.    The Percentage Method is The Preferred Method in the
Second Circuit When Awarding Attorneys' Fees in a
Common Fund Case........................................................................9

    3.    The 30% of the Common Fund Class Counsel Are Requesting
Is Reasonable Under the *Goldberger* Six Factor Test .................12

        a.    Class Counsel Expended Substantial Efforts on Behalf
of the Class on This Case Over a Two Year Period ..........12

        b.    This Litigation was Large and Complex............................12

        c.    Class Counsel Undertook This Action Without
Any Assurance of Payment................................................13

        d.    Class Counsel Are Experienced Lawyers Who
Obtained An Excellent Result for the Class ......................14

        e.    The 30% Fee Sought is Reasonable
in Relation to the Settlement..............................................15

        f.    Public Policy Considerations Support
Class Counsel's Fee Request .............................................15

B.    Class Counsel's Request For Attorneys' Fees of $2,250,000
is Also Reasonable Under a Lodestar Analysis .........................................16

II.    THE COSTS AND EXPENSES FOR WHICH CLASS COUNSEL
SEEK REIMBURSEMENT ARE REASONABLE...............................................17

III.    THE REACTION OF THE CLASS FULLY SUPPORTS
THE FULL AWARD OF FEES AND REQUESTED COSTS
AND EXPENSES REIMBURSEMENT ..............................................................19

CONCLUSION..............................................................................................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182, 190 (2nd Cir. 2008) ............................................................11

*A.H. Phillips v. Walling*,
    324 U.S. (1945)........................................................................................16

*Boeing Co. v. Van Gamert*,
    444 U.S. (1980)........................................................................................8, 9

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).....................................................................13

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) ...............................................................16

*Dolgow v. Anderson*,
    438 F.2d 825 (2d Cir. 1970).....................................................................16

*Frank v. Eastman Kodak*,
    228 F.R.D. 174 (W.D.N.Y., 2005)............................................................13

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Circ. 2000)............................................................. *passim*

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................8, 16

*Imbeault v. Rick's Cabaret, Int'l, Inc.*,
    2009 U.S.Dist. LEXIS 71562 (S.D.N.Y. Aug. 13, 2009)...........................18

*In re American Bank Note Holographics*,
    127 F.Supp.2d 418 (S.D.N.Y. 2001)........................................................11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ..........................................10

*In re Boesky Securities Litigation*,
    888 F.Supp.551 (S.D.N.Y., 1995).............................................................17

*In re Continental Ill. Sec. Litig.*,
    962 F.2d 566, 568 (7th Cir. 1992) ...........................................................11

*In re Crazy Eddie Securities Litigation*,
    824 F.Supp.320 (E.D.N.Y. 1993) ...............................................................9

*In re Gilat Satellite Networks, Ltd.*,
    2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .......................................8, 15

*In re Global Crossing Sec. & ERISA Litigation*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................12, 14

*In re Independent Energy Holdings PLC Sec. Litigation*,
302 F.Supp.2d 180 (S.D.N.Y. 2003)........................................................................17

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .........................................................11

*In re Lloyd's Am. Trust Fund Litig.*,
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ......................................................17

*In re NASDAQ Market-Makers Antitrust Litigation*,
187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................10, 17

*In re RJR Nabisco, Inc. Sec. Litig.*,
1992 WL 210138, (S.D.N.Y. August 24, 1992) .....................................................17

*In re Sumitomo Copper Litigation*,
74 F.Supp.2d 393 (S.D.N.Y. 1999)..................................................................11, 15

*Maley v. Del Global Techs. Corp*,
186 F.Supp.2d 358 (S.D.N.Y. 2002)................................................................ *passim*

*McDaniel v. County of Schenectady*,
___F.3d___, 2010 WL 520899 (2d Cir. 2010) ...................................................10, 12

*Miltland Raleigh-Durham v. Myers*,
840 F.Supp.235 (S.D.N.Y. 1993).............................................................................17

*Rabin v. Concord Assets Group, Inc.*,
1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ..........................................................17

*Savoie v. Merchandises Bank*,
166 F.3d 456 (2d Cir. 1999)....................................................................................11

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F.Supp.2d 254 (S.D.N.Y. 2003)........................................................................11

*Swedish Hospital Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ..................................................................................10

*Taft v. Ackermans*, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................8, 14, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 2d Cir. 2005)..................................................................................11, 16

*Westerfield v. Washington Mutual*,
2009 U.S.Dist. LEXIS 94544 (E.D.N.Y. Oct. 8, 2009)..............................................18

iv

**FEDERAL DOCKETS**

*Rosenburg v. International Bus. Machines Corp.*,
No. C06-0430 PJH (N.D. Cal.) ........................................................................ *passim*

**FEDERAL RULES**

Federal Rule of Civil Procedure 23 (h) ...............................................................1

## **INTRODUCTION**

Class Counsel have negotiated and secured a $7.5 million, plus interest, common fund Settlement Fund for the benefit of Plaintiffs and 6,611 Class Members to resolve their claims for overtime compensation and related wage and hour violations, under federal and state law. Class Counsel submit this application, pursuant to Federal Rule of Civil Procedure 23(h), to request that this Court approve an award of attorneys' fees of $2,250,000 from the Settlement Fund. The attorneys' fee requested is 30 percent of the common fund, without interest. Plaintiffs also request reimbursement from the Settlement Fund of $150,000 in costs and expenses that Class Counsel have incurred in connection with the prosecution of this litigation. No Class Member has objected to the fees and costs requested, which were described in the Notice mailed to all Class Members. Declaration of Jonathan Paul with Respect to Claims Administration ("Paul Decl.") at ¶¶9, 21, Exh. A at 5.

The requested fees are fair, reasonable, and appropriate under either the common fund doctrine or the lodestar approach. The factors the Second Circuit set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), for evaluating a fee application all support the requested fee: (1) Class Counsel devoted many thousands of hours to this case over a two years period; (2) the case is large and complex; (3) Class Counsel has worked on this case with the risk that they would receive nothing if the case proved unsuccessful; (4) Class Counsel are experienced lawyers who obtained an excellent result for the class; (5) the requested 30% fee is reasonable in relation to the settlement; and (6) the litigation vindicated workers' rights.

Class Counsel's request for 30 percent of the fund is consistent with what courts in the Second Circuit commonly use to award fees in class action settlements similar to this one. Class Counsel's requested fee is also reasonable under the lodestar method. The requested fee of $2,250,000 is less than Class Counsel's aggregate lodestar of $2,387,528.00 for the over 6,060 hours of attorney and paralegal hours they spent litigating this case for almost two

years. Finberg Decl. at ¶35, Ex. 1.[1]

The costs and expenses for which reimbursement is sought were appropriately incurred in connection with the prosecution of this action. They are of the types regularly approved for reimbursement in class actions in this Circuit.[2]

## FACTUAL STATEMENT

### A.     This Case Was Large and Complex.

Class Counsel represent a Class consisting of approximately 6,611 current and former IBM employees, Paul Decl. at ¶7, who were in bands 6, 7, and/or 8 of position codes 499A, 499K, 594J, 595K, and/or 999A-E at any time on or after January 12, 2007 up through and including December 31, 2008 (all of whom were treated by IBM as exempt from overtime pay requirements) and were subsequently reclassified, during that time frame, to band 6, 7, or 8 of position code 995K or 999K (and thus were treated by IBM as non-exempt employees entitled to overtime). Order Conditionally Certifying Settlement Class at 3 (Dkt. No. 96).[3] Plaintiffs contended that IBM misclassified Class Members as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and state wage laws of 15 states. First Amended Complaint (Dkt. No. 67) ¶ 6.

---

[1] The Declaration of James M. Finberg in support of (1) Motion for Final Settlement Approval and (2) Application for Attorneys' Fees and Reimbursement of Costs and Expenses ("Finberg Fee Decl.") attaches as Exhibit 1, a summary of the lodestar of all firms serving as Class Counsel (except the law offices of Dan Palay, which has chosen not to submit a fee application). Attached as Exhibits 6 to 15 of the Finberg Fee Decl. are declarations from each firm serving as Class Counsel(other than Palay) documenting the time that each Class Counsel firm spent on to this action.

[2] Exhibit 2 to the Finberg Fee Decl. contains a summary by category of the costs incurred by Class Counsel.

[3] The Class does not include (1) the 382 such employees listed in the Appendix to the Settlement Agreement who, after being so reclassified, were re-reclassified to exempt positions and (2) the individual who had asserted a Released Claim (as defined in the Settlement Agreement) in a lawsuit (other than the Litigation) that was pending and served on IBM as of September 16, 2009 and whom IBM identified to Class Counsel in writing prior to the execution of the Settlement Agreement as a plaintiff in such a lawsuit. Order Conditionally Certifying Class at 3 (Dkt. No. 96). For members of the class in the *Rosenburg* case, the Recovery Period beings on July 13, 2007, after the end of the release in the *Rosenburg* case. Settlement Agreement (Dkt. No 94-2) at ¶1.19.

The Class Counsel representing the Plaintiffs and the Class and Collective Action Members are the law firms of Altshuler Berzon LLP, Outten & Golden LLP, Lieff, Cabraser, Heimann & Bernstein, LLP, Lewis Feinberg Lee Renaker & Jackson, P.C., Rudy Exelrod Zieff & Lowe, LLP, Spiro Moss, LLP, Lee & Braziel, LLP, Bruckner Burch, PLLC, Goldstein, Demchak, Baller, Borgen & Dardarian, Cohelan Khoury & Singer, Palay Law Firm, and Werman Law Office, P.C.  Dkt. 96 at 6-7 ("Class Counsel"). James Finberg of Altshuler Berzon LLP has served as lead Class Counsel.

### B.    Class Counsel Conducted a Pre-Filing Investigation.

Many of the attorneys who are Class Counsel in this matter were also Class Counsel in a prior lawsuit against IBM -- *Rosenburg v. Int'l Bus. Machines Corp.*, No. C06-0430 PJH (N.D. Cal.).  In the *Rosenburg* case, which also involved misclassification claims regarding the same jobs, Class Counsel interviewed hundreds of IBM employees in these same positions about their job duties during the time period immediately preceding the time covered by this lawsuit. In *Rosenburg*, Class Counsel took extensive discovery, including taking five depositions and obtaining and reviewing tens of thousands of pages of documents. Finberg Fee Decl. ¶15, ¶19. The *Rosenburg* case settled in 2007 for $65 million. In 2008, IBM reclassified approximately 7,000 members of the *Rosenburg* class from exempt to non-exempt status, but did not pay those persons overtime for the period during which they remained misclassified after the end of the *Rosenburg* release period.

Before filing the complaint in this action, Class Counsel spoke to Mr. Danieli and several others about IBM's reclassification of thousands of *Rosenburg* case members, and IBM's failure to pay those persons for the overtime they worked during the period when they were still misclassified. Finberg Fee Decl. at ¶¶11-12.

**C.      After Filing the Complaint, Class Counsel Thoroughly Investigated the Facts Through Both Formal Discovery and Informal Interviews.**

### 1.      Class Counsel Filed a Complaint and an Amended Complaint.

Based on their pre-filing investigation, Class Counsel prepared and filed a complaint on April 17, 2008, alleging that IBM had misclassified Class Members as exempt from overtime in violation of the Fair Labor Standards Act, ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), and California law, then correctly reclassified these employees, but without paying them for the overtime worked during the time period they were misclassified.   Complaint (Dkt. 1).  The complaint sought to bring a collective action for similarly situated persons under the FLSA and also sought Rule 23 class certification of the nationwide ERISA class and a California state wage law subclass.  As described below, Class Counsel then undertook substantial investigation and discovery, upon which they based the February 23, 2009 First Amended Complaint which added Plaintiffs Silva, March, Golkowski, Jacobs, Glavan, Moore, Antonelli, Post, Ottogalli, McCambridge, Nulty, Caldwell, Luca, Rollins, Maruca, and Habeck and alleged Rule 23 state law class claims under the wage laws of the states of California, Colorado, Connecticut, Illinois, Kentucky, Maryland, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Washington, and Wisconsin.  First Amended Complaint (Dkt. No. 67).

### 2.      Class Counsel Propounded Written Discovery.

The Parties also engaged in extensive discovery.  After the complaint in this action was filed, Class Counsel served IBM with a set of interrogatories and a set of requests for production of documents.  Counsel sought documents regarding: (1) Class Members' employment with the Company; (2) IBM's compliance with the FLSA, the state wage laws, and ERISA; (3) Company policies and procedures regarding IBM's classification and subsequent reclassification of potential Class Members; (4) Company policies, procedures and practices regarding recording of hours worked by potential Class Members; (5) the job tasks, assignments, duties and functions performed by potential Class Members; (6) formal

and informal training received by potential Class Members regarding how to perform their job tasks, assignments, duties and functions; and (7) hours worked and compensation paid to potential Class Members.  Declaration of James M. Finberg in Support of Preliminary Approval ("Finberg Preliminary Approval Decl.") (Dkt. 94) at ¶ 16.  IBM produced more than 23,000 pages of documents in response to these requests.  *Id.*  This was in addition to the many tens of thousands of documents produced in *Rosenburg*, which the Parties agreed could be used in *Danieli*, since they were relevant to the claims in both cases.  *Id.*  Class Counsel could not rely solely on the *Rosenberg* discovery, however, because *Danieli* involves a different time period, additional state laws, and IBM's subsequent reclassification of Class Members (a factor not present in *Rosenberg*).

          **3.**      **With the Help of an Expert, Class Counsel Analyzed IBM's Payroll Data.**

Pursuant to Plaintiffs' document requests, IBM also produced an electronic database containing payroll data for the proposed class.  *Id.* at ¶ 17.  These data included identifying information, dates of employment, department and group codes, wage rates, hours reported, and other fields of data.  *Id.*  Class Counsel analyzed these data, with the assistance of a statistical expert, to estimate the proposed class's damages.  *Id.*

          **4.**    **Class Counsel Interviewed 450 witnesses.**

Based on a list of addresses produced by IBM, Class Counsel sent letters to class members seeking information related to the case.  *Id.* at ¶ 18.  Class Counsel conducted extensive interviews with over 450 class members regarding their job duties.  *Id.*  More than 300 class members have submitted consents to join in the FLSA action.  (Dkt. Nos.1, 56, 57, 67, 70, 71, 72, 74, 75, 76, 77, 79, 80, 82, 83, 87, 88).

          **5.**    **Class Counsel Defended Nine Depositions in this Action and took Five in *Rosenburg*.**

In 2009, IBM deposed four plaintiffs and five opt-ins in the *Danieli* case. Finberg Preliminary Approval Decl. (Dkt. No. 94) at ¶ 20.  Five depositions conducted by Class

Counsel in the *Rosenburg* case of IBM's corporate designees, which covered topics including job duties, supervision, training, and IBM's classification decisions, also provided relevant information. *Id.*

### D. Class Counsel Prepared and Served (1) A Motion for FLSA Collective Action Designation and Supporting Papers (2) Papers in Opposition to Four Motions For Summary Judgment, and (3) Briefs Regarding Evidentiary Issues.

On March 18, 2009, Class Counsel served IBM with Plaintiffs' Notice of Motion and Motion for Conditional Certification of FLSA Collective Action and Facilitation of Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act. The Parties fully briefed that motion. Class Counsel's papers included extensive evidence. Class Counsel submitted 76 declarations from fact witnesses in support of that motion. *Id. at* ¶ 21.

Also on March 18, 2009, IBM served separate Summary Judgment Motions directed to Plaintiffs Danieli and Rollins and opt-ins Sorokach and Parker. The parties fully briefed the motion. Class Counsel's opposition papers, served on May 29, 2009, were supported by substantial evidence including excerpts of depositions from Danieli, Rollins, Sorokach, and Parker, declarations from Danieli and Sorokach, and many documents produced by IBM. *Id.* at ¶ 22.

IBM also served on Class Counsel a Motion to Strike Certain Evidence regarding IBM's reclassification decision that Class Counsel had submitted with their opposition to IBM's summary judgment motions. The parties fully briefed that motion. *Id.* at ¶ 23.

### E. The Settlement Negotiations Were Hard Fought and at Arms' Length.

The Parties participated in a full day mediation session on September 16, 2009. The mediation was presided over by David Rotman, an experienced mediator who had helped the parties to resolve the *Rosenburg* case. *Id.* at ¶ 25. Prior to the mediation session, the Parties exchanged extensive mediation briefs, with supporting evidence. *Id.* Class Counsel also submitted a damages analysis prepared by the statistician they retained to analyze the payroll

data.  *Id*.  The parties had extensive communications prior to the mediation regarding the

damages calculations.  *Id*.  Named Plaintiff Danieli attended the mediation session and other

Plaintiffs communicated with Class Counsel via email during the mediation session. *Id.* at ¶

26.

At the end of the full-day mediation session, Mediator Rotman made a mediator's

proposal in an effort to arrive at resolution in spite of the impasse the Parties had reached.  *Id.*

at ¶ 27.  Each side accepted the mediator's proposal and the agreement was reduced to a

signed memorandum of understanding at the mediation.  *Id*.  After that, the parties continued

their negotiations, exchanging extensive iterations of comments and edits to the proposed

settlement agreement, involving every material term.  These negotiations culminated in the

signing of a Joint Stipulation of Settlement and Release on October 15, 2009, a copy of

which was attached as Exhibit 1 to the Declaration of James M. Finberg in Support of

Motion for Order (1) Conditionally Certifying Settlement Class and Collective Action, (2)

Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation,

(3) Directing Dissemination of Notice and Related Material to the Class, (4) Approving

Releases and (5) Setting Date for Fairness Hearing and Related Dates. (Dkt. 94-2.)

### F. Class Counsel Have Been Actively Involved in the Settlement Approval and Claims Administration Processes.

Since the signing of the Joint Stipulation of Settlement and Release, Class Counsel

have been involved in the drafting of the Motion for Preliminary Approval, attending the

hearing on Preliminary Approval, communicating with the Settlement Administrator to

ensure accurate and timely distribution of the Notice of Proposed Settlement of Class Action

Lawsuit and Fairness Hearing, and communicating with the numerous Named Plaintiffs and

putative Class Members, who have had questions about the lawsuit.  Finberg Fee Decl. at

¶¶24-26.

Class Counsel anticipate many more hours will be required in order to effectuate and

supervise the settlement of this action. *Id*. at ¶35.

**ARGUMENT**

I.     **THE ATTORNEYS' FEE CLASS COUNSEL SEEK IS REASONABLE UNDER EITHER THE COMMON FUND DOCTRINE OR THE LODESTAR APPROACH.**

Class Counsel seek an award of attorneys' fees in the amount of $2,250,000. That amount is 30% of the settlement fund Class Counsel's efforts have created. Courts in the Second Circuit frequently award 30% of a common fund as an attorneys' fee award in class action cases. *See, e.g. Hicks v. Morgan Stanley,* 2005 WL 2757792 at * 9 (S.D.N.Y. Oct. 24, 2005) (awarding 30% fee from a $10 million fund); *In re Gilat Satellite Networks, Ltd.,* 2007 WL 2743675 at * 16 n. 41 (E.D.N.Y. Sept. 18, 2007) (awarding 30% fee from a $14 million Common Fund); *Taft v. Ackermans,* 2007 WL 414493 at * 10-11 (S.D.N.Y. Jan 31 2008) (awarding 30% fee on a $15 million settlement).

Here, Class Counsel's requested fee is also reasonable under the lodestar (i.e. reasonable hours x reasonable rates) method. Class Counsel have devoted over 6,060 hours, having a lodestar value of over $2,387,528 to this case. The fee they seek is only 94% of their lodestar.

A.     **Class Counsel's Requested Attorneys' Fee of 30% of the Settlement Fund is Reasonable Under the Common Fund Doctrine.**

It is well established that attorneys whose efforts have created a common fund that benefits a class are entitled to seek a portion of that fund as an attorneys' fee. *Boeing Co. v. Van Gamert*, 444 U.S. 472, 478 (1980). In the Second Circuit, awarding attorneys whose efforts have created a common fund a percentage of that fund is the preferred method of setting attorneys' fees. *Maley v. Del Global Techs. Corp,* 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002). Thirty percent is a typical award for a settlement of this size. *See., e.g., Hicks,* 2005 WL 2757792 at *9.

1.    **Courts Have Recognized That Counsel Who Have Obtained a Common Fund Can Seek Fees and Costs From That Fund.**

Courts have long recognized that private plaintiffs or their attorneys whose efforts result in the creation of a common fund that benefits others are entitled to recover attorneys' fees and costs from that fund. *See Boeing Co.*, 444 U.S. at 478 (1980); *In re Crazy Eddie Securities Litigation*, 824 F.Supp.320, 325 (E.D.N.Y. 1993). The common fund doctrine

> rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co.,* 444 U.S. at 478 (citation omitted). Federal courts recognize that when counsel's litigation efforts result in a common fund that benefits class members, counsel has an equitable right to be compensated from that fund for his or her work in creating the fund. *See e.g. Id.* at 478; *Goldberger*, 209 F.3d at 47.

This litigation resulted in a $7.5 million, plus interest, common settlement fund created for the benefit of 6,611 class members. Paul Decl. at ¶7. None of these individuals has paid Class Counsel for their work on this case, Finberg Fee Decl. at ¶36, ¶41; thus equity requires that Class Counsel be paid for their efforts out of the common fund created by this litigation. *See Boeing Co.*, 444 U.S. at 479-81; *Maley*, 186 F.Supp.2d at 369 (the purpose of the common fund doctrine is to spread the burden of the costs of litigation among those who have benefited).

2.    **The Percentage Method is The Preferred Method in the Second Circuit When Awarding Attorneys' Fees in a Common Fund Case.**

Courts in this Circuit prefer to award fees as a percentage of the common fund rather than using the lodestar method. *Maley*, 186 F.Supp.2d at 370 (recognizing the "trend within this Circuit is to use the percentage of recovery method to calculate fee awards to class

counsel in cases where the settlement results in the creation of a common fund"); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F.Supp.2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases). In 2006, Judge Kram of this district wrote that "[a]lthough the Second Circuit has vested the lower circuits with the option of using either the percentage or lodestar methods, every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach, without much case-specific analysis of the choice." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 3057232 at *9 (S.D.N.Y. Oct. 25, 2006) (citations omitted).[4]

A majority of other circuits have also approved and favored the percentage method in common fund cases. *See Maley*, 186 F.Supp.2d at 370 ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

There are many reasons why courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it gives attorneys incentive to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger*, 209 F.3d at 47-50.

---

[4] In *McDaniel v. County of Schenectady,* ___F.3d___, 2010 WL 520899 at *6 (2d Cir. Feb. 10, 2010), the Second Circuit noted that "[a]lthough we have acknowledged that 'the trend in this Circuit is toward the percentage method,' it remains the law in this Circuit that courts 'may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc,* 396 F.3d 96, 121 (2d Cir 2005)). In *McDaniel*, the district court for The Northern District of New York exercised its discretion to award fees on a lodestar basis. Here, the attorneys' fee of $2,250,000 Class Counsel seeks under the 30% of the common fund approach is less than Class Counsel's lodestar of $2,387,528.00.

Second, the common fund method also closely aligns with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F.Supp.2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *In re American Bank Note Holographics*, 127 F.Supp.2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (citing *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). This is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2nd Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. Although *Arbor Hill* did not arise in the context of a class action common fund fee request, *Arbor Hill*'s approach supports using the percentage of the fund method, which is consistent with the way that these Class Members would pay their attorneys if they hired them individually. *See In re Sumitomo Copper Litig.*, 74 F.Supp.2d at 397.

Third, the percentage method promotes early resolution. As the Second Circuit has stated, it "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121. The percentage method decreases the incentive for Class lawyers to run up the number of billable hours, and gives them no incentive to avoid early settlement. *Id.*

Fourth, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *In re Interpublic Sec. Litig.,* 2004 WL 2397190, at *11 (S.D.N.Y. October 26, 2004) (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). As the Second Circuit noted in *Goldberger*, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to

11

engage in a gimlet-eyed review of line-item fee audits." 209 F.3d at 48-49. While the lodestar is still used as a cross check when courts apply the percentage method, courts are not required to scrutinize fee records to the same extent they would if applying only the lodestar method. *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check).

### 3.    The 30% of the Common Fund Class Counsel Are Requesting Is Reasonable Under the *Goldberger* Six Factor Test.

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50. All of the *Goldberger* factors weigh in favor of granting approval to Class Counsel's fee application here.[5]

### a.    Class Counsel Expended Substantial Efforts on Behalf of the Class on This Case Over a Two Year Period.

Over a period of almost two years, Class Counsel have devoted over 6,060 hours, with a lodestar value of $2,387,528.00 to this litigation. That lodestar exceeds the $2.25 million fee Class Counsel are requesting.

### b.    This Litigation was Large and Complex.

This matter was brought on behalf of 6,611 current and former employees of IBM, located throughout the country. Paul Decl. at ¶7. Class Counsel obtained and reviewed tens

---

[5] In *McDaniel*, the Second Circuit confirmed that "[t]he *Goldberger* factors are applicable to the court's reasonableness determination whether a percentage-of-fund or lodestar approach is used." *McDaniel* at *11.

of thousands of documents, interviewed approximately 450 Class Members, and defended

nine depositions. Finberg Fee Decl. at ¶15-17.  Class Counsel also researched the applicable

overtime exemptions under the federal Fair Labor Standards Act and those of 15 states.  *Id.*

Class Counsel prepared a motion for collective action designation of the FLSA claim in this

case (together with 76 witness declarations and substantial evidence), opposed four motions

by IBM for summary judgment on merits issues, and briefed evidentiary issues relating to the

admissibility of a company's subsequent reclassification of its employees, an issue hotly

contested in this action. *Id.* at ¶¶20-22.

   Given the number of class members, 6,611, Paul Decl. at ¶7, and the mixed questions

of law and fact at issue, the magnitude and complexity of this action supports approving

Class Counsel's attorneys' fees.  *See Frank v. Eastman Kodak*, 228 F.R.D. 174, 189

(W.D.N.Y., 2005) (finding mixed questions of law and fact of a FLSA and state wage and

hour action complex in nature, which supported a 38% common fund attorneys' fee award).

### c.    Class Counsel Undertook This Action Without Any Assurance of Payment.

   The risk of litigation is also an important factor in determining a fee award.

Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the

reasonableness of an award. *Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974).

"[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at

471.

   Class Counsel undertook the prosecution of this action without an assurance of

payment for their services, litigating this case on a wholly contingent basis.  Finberg Fee

Decl. ¶36.  Large-scale wage and hour cases of this type are, by their very nature,

complicated and time-consuming.  Any lawyer undertaking representation of large numbers

of affected employees in wage and hour actions inevitably must be prepared to make a

tremendous investment of time, energy, and resources which Class Counsel did. Finberg Fee

Decl., Ex. 1.

IBM vigorously defended this action. It opposed Plaintiffs' Motion for FLSA collective action designation and brought four motions for Summary Judgment on merits issues.   Although Class Counsel believe that the class state claims should be certified under Rule 23, IBM was prepared to argue that the court should not certify various Rule 23 class claims on the grounds that a trial of those claims would not be manageable.

### d.    Class Counsel Are Experienced Lawyers Who Obtained An Excellent Result for the Class.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft,* 2007 WL 414493, at *10 (citing *In re Global Crossing*, 225 F.R.D. at 467).

The twelve firms that comprise Class Counsel in this action have substantial experience in prosecuting large wage and hour class and collective actions such as this. Several of them are recognized in *Best Lawyers in America*, in the field of Labor and Employment Law. Several are members of the American College of Labor and Employment Lawyers. Among them, they have handled some of the largest wage and hour cases in U.S. history, and obtained some of the largest trial judgments and settlements.[6]

Here, the firms serving as Class Counsel obtained an excellent result for the Class. IBM has agreed to pay a total of $7,500,000, plus interest on that sum, plus the employer's share of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, on amounts treated as wage.  Each Class Member of the approximately 3,335 class members

---

[6] The resumes of the firms serving as Class Counsel are attached as Exhibits 2 through 13 of Declaration of James M. Finberg in Support of Motion for Order (1) Conditionally Certifying Settlement Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice and Related Material to the Class, (4) Approving Releases and (5) Setting Date for Fairness Hearing and Related Dates. (Dkt. 94)

who has submitted a timely, signed Claim Form, Paul Decl. at ¶13, will receive a payment based on an allocation formula that takes into account the Class Member's weekly base earnings during the claims period and the amount of time worked for IBM during the claims period with an upwards adjustment for Class Members who worked in California. Given the number of claims submitted, the average payment to each Class Member will be almost $1,500.[7]

### e.    The 30% Fee Sought is Reasonable in Relation to the Settlement.

In this Circuit, it is common for courts to award 30% of the fund as an attorneys' fee in a class action case that created a common fund. *See, e.g., Hicks,* 2005 WL 2757792, at *9 (citation omitted) (awarding 30% fee from a $10 million fund); *see e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n. 41 (awarding 30% fee in a $14 million settlement); *Maley,* 186 F.Supp.2d at 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *Taft,* 2007 WL 414493, at **10-11 (awarding 30% fee on a $15 million settlement) (collecting cases holding same).

### f.    Public Policy Considerations Support Class Counsel's Fee Request.

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F.Supp.2d at 399. The FLSA and the state wage and hour laws are

---

[7] That number is computed as follows: If the Court approves the $2,250,000 in fees and the $150,000 in costs requested, the $80,000 in service payment requested, and the cost of claims administration is $80,000 (as capped in the contract with the Claims Administrator), then the Net Settlement Fund will be $4,940,000. That number divided by 3,335 (i.e. the approximate number of claims timely submitted), Paul Decl., at ¶13, is approximately $1,481.26.

remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work."). Fair compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. Many courts have recognized that fee awards in cases such as this serve the dual purpose of encouraging class representatives, acting as private attorneys general, to seek redress for damages and discouraging future misconduct of a similar nature. *Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968) (citations omitted), reversed and remanded on other grounds, 438 F.2d 825 (2d Cir. 1970).

Here, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee of thirty percent. The award of Class Counsel's requested fees will encourage the prosecution of similar claims and further a significant goal of public interest.

All the *Goldberger* factors justify granting Class Counsel's requested fees of 30% of the Settlement Fund.

**B.     Class Counsel's Request For Attorneys' Fees of $2,250,000 is Also Reasonable Under a Lodestar Analysis.**

In awarding fees, the trend in the Second Circuit is to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross-check." *Wal-Mart Stores, Inc.*, 396 F.3d at 123. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50. However, such hours "need not be exhaustively scrutinized by the district court." *Id.*

As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Wal-Mart Stores, Inc.*, 396 F.3d at 123, n.27. Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the

consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Securities Litigation*, 888 F.Supp.551, 562 (S.D.N.Y., 1995); *see also Goldberger*, 209 F.3d at 47.

Courts in the Second Circuit award lodestar multipliers that range anywhere from 2 to 6. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at **27 (S.D.N.Y. November 26, 2002) (finding that the "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within [the Second] Circuit"); *Maley*, 186 F.Supp.2d at 371 (finding that the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 489 (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.,* 1991 WL 275757, at **1-2, (S.D.N.Y. December 19, 1991) (awarding multiplier of 4.15 and observing that "in recent years multipliers of between 3 and 4.5 have been common"); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at **5-8, (S.D.N.Y. August 24, 1992) (awarding multiplier of 6).

As set forth in further detail in the accompanying declarations, Class Counsel spent almost two years litigating this matter.  Finberg Fee Dec. at ¶¶27-28, ¶¶34-35, Ex. 6 to 15. The over 6,060 hours Class Counsel spent at this litigation, multiplied by reasonable market rates for attorneys with this level of skill and experiences, results in a lodestar of over $2,387,528.00  Thus, by seeking 30% of the common fund, Class Counsel will be receiving less than their lodestar.

## II.    THE COSTS AND EXPENSES FOR WHICH CLASS COUNSEL SEEK REIMBURSEMENT ARE REASONABLE.

Class Counsel request expenses in the amount of $150,000 to be paid from the Settlement Fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v.*

*Myers*, 840 F.Supp.235, 239 (S.D.N.Y. 1993)).

Here, Class Counsel's un-reimbursed expenses were incidental and necessary to the representation of the Class. Finberg Fee Decl. ¶¶ 41-42. The single largest expense of $74,000 was paid to a statistical expert who analyzed IBM's payroll data and prepared damages analyses. That expense, although large, was essential to the prosecution of the action. The other major costs included deposition transcripts, the mediator's fee, travel to and from depositions, mediation charges, telephone charges, postage, photocopies, and electronic research. Finberg Fee Decl. ¶40. A summary of all of the costs and expenses incurred by Class Counsel is attached as Exhibit 2 to the Finberg Fee Declaration; the numbers in the chart are supported by declarations from each Class Counsel firm.[8] The declarations from the firms serving as Class Counsel established that Class Counsel have already incurred $149,577 in costs and expenses in connection with the prosecution of this action.[9] Class Counsel reasonably expect to incur additions expenses in connection with completing the settlement approval and administration process. Finberg Fee Decl. at ¶40.

Each expense incurred was necessary to the successful prosecution of this complex litigation. Finberg Fee Decl. ¶42. Reimbursement of these types of expenses is commonly approved by courts in this Circuit. *See, e.g., Westerfield v. Washington Mutual,* 2009 U.S. Dist. LEXIS 94544 at *12 (E.D.N.Y. Oct 8, 2009) (approving $352,510.90 in reimbursement of costs from settlement of wage/hour case); *Imbeault v. Rick's Cabaret Intl., Inc.*, 2009 U.S. Dist LEXIS 71562 at *31-37 (S.D.N.Y Aug. 13, 2009) (describing categories of costs and expenses that are reasonable).

---

[8] Exhibits 6 to 15to the Finberg Fee declaration provide the costs and expenses incurred by each firm. Exhibit 3, to the Finberg Fee declaration provides the costs and expenses paid from the litigation cost fund.

[9] Exhibit 2 to the Finberg Fee Decl. indicates that the costs and expenses incurred to date by the firms serving as Class Counsel, including cost fund contributions, totals $151,202.01. Exhibit 3 to the Finberg Fee Decl. shows that $1,625.73 is currently left in the cost fund. $151,202.01 - $1,6275.73 = $149,577. Telephone calls with class members about when class members will receive their settlement checks alone will likely cost more than the $423 difference between that figure and $150,000.

III.   **THE REACTION OF THE CLASS FULLY SUPPORTS THE FULL AWARD OF FEES AND REQUESTED COSTS AND EXPENSES REIMBURSEMENT.**

"The reaction by members of the Class is entitled to great weight by the Court." *Maley*, 186 F.Supp.2d at 374.  In accordance with this Court's Order of November 16, 2009, Notice was sent to almost 7,000 Class Members informing them of the class action settlement and clearly stating Class Counsel's intent to move the Court for an attorneys' fees award of 30 percent of the Settlement in the amount of $2,250,000, and for reimbursement of costs and expenses not to exceed $150,000. Paul Decl. at ¶9, Exh. A at 5.  All Class Members were given until January 25, 2010 to serve an objection to the fee application or to the cost and expense reimbursement request.  Not one Class Member has objected to the request for fees or to the request for reimbursement of costs and expenses.  Paul Decl. at ¶21.  Such a positive response supports approval of Class Counsel's fee, expense and service payments application.  *Maley*, 186 F.Supp.2d at 374.

## CONCLUSION

For the reasons set forth above, Class Counsel respectfully request that the Court grant Class Counsel's Application for Approval of Attorneys' Fees and Reimbursement of Costs and Expenses and enter an Order awarding: (i) attorneys' fees in the amount $2,250,000 and (ii) reimbursement of out-of-pocket costs and expenses in the amount of $150,000.

Dated:  February 24, 2010                    Respectfully submitted,

                                             By:   /s/ James M. Finberg
                                                   James M. Finberg

James M. Finberg (admitted *pro hac vice*)
Eve Cervantez (admitted *pro hac vice*)
Peder Thoreen (admitted *pro hac vice*)
ALTSHULER BERZON, LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
Email: jfinberg@altber.com
Email: ecervantez@altber.com
Email: pthoreen@altber.com
*Lead Counsel For Class and Collective Action
Members*

Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
OUTTEN & GOLDEN LLP
3 Park Ave., 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
Email: atk@outtengolden.com
Email: jms@outtengolden.com
Email: tlq@outtengolden.com

Rachel Geman (RG 0998)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor New York, NY
10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: rgeman@lchb.com

Kelly M. Dermody (admitted *pro hac vice*)
Jahan C. Sagafi (admitted *pro hac vice*)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: kdermody@lchb.com
Email: jsagafi@lchb.com

Todd F. Jackson (admitted *pro hac vice*)
LEWIS FEINBERG LEE RENAKER &
JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email: tjackson@lewisfeinberg.com

Steven G. Zieff (admitted *pro hac vice*)
David A. Lowe (admitted *pro hac vice*)
Patrice L. Goldman (admitted *pro hac vice*)
Kenneth J. Sugarman (admitted *pro hac vice*)
John T. Mullan (admitted *pro hac vice*)
RUDY EXELROD ZIEFF & LOWE, LLP
351 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 434-9800
Facsimile: (415) 434-0513
Email: sgz@rezlaw.com
Email: dal@rezlaw.com
Email: plg@rezlaw.com
Email: kjs@rezlaw.com
Email: jtm@rezlaw.com

Ira Spiro (SBN 67641)
SPIRO MOSS, LLP
11377 W. Olympic Blvd., Fl. 5
Los Angeles, CA 90064-1625
Telephone: (310) 235-2468
Facsimile: (310) 235-2456
Email: ispiro@smbhblaw.com

J. Derek Braziel (admitted pro hac vice)
LEE & BRAZIEL, LLP
208 N. Market Street
Dallas, TX 75202
Telephone: (214) 749-1400
Facsimile: (214) 749-1010
Email: jdbraziel@l-b-law.com

Richard Burch (24001807 [TX])
BRUCKNER BURCH, PLLC
1415 Louisiana Avenue, Suite 7175
Houston, TX 77002
Telephone: (713) 877-8788
Facsimile: (713) 877-8065
Email: rburch@brucknerburch.com

David Borgen (admitted pro hac vice)
GOLDSTEIN, DEMCHAK, BALLER, BORGEN
& DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Telephone: (510) 763-9800
Facsimile: (510) 835-1417
Email: borgen@gdblegal.com

Michael Singer
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101
Phone: (619) 595-3001
Fax: (619) 595-3000
E-mail: msinger@ck-lawfirm.com

Daniel Palay
PALAY LAW FIRM
1484 East Main Street
Ventura, CA 93001
Telephone: (805) 641-6600
Facsimile: (805) 641-6607
E-mail: djp@palaylaw.com

Douglas Werman
WERMAN LAW OFFICE, P.C.
77 West Washington, Suite 1402
Chicago, IL 60602
Telephone: (312) 419-1008
Fax: (312) 419-1025
dwerman@flsalaw.com

*Attorneys for Plaintiffs and the
Class and Collective Action Members*